# 25-868-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————————————

THE SATANIC TEMPLE, INC.,

*Plaintiff-Appellant,*

— v. —

NEWSWEEK MAGAZINE LLC,

*Defendant-Appellee,*

JULIA DUIN,

*Defendant.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

CAMERON STRACHER
SARA TESORIERO
CAMERON STRACHER, PLLC
1133 Broadway, Suite 516
New York, New York 10010
(646) 992-3850

*Attorneys for Defendant-Appellee*

CP COUNSEL PRESS    (800) 4-APPEAL • (384315)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, Defendant-Appellee states that Newsweek Digital LLC is owned by NW Media Holding Corp., which is a privately held company.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS................................................................................... ii

TABLE OF AUTHORITIES ...........................................................................iv

COUNTERSTATEMENT OF THE ISSUES
    PRESENTED FOR REVIEW ....................................................................1

COUNTERSTATEMENT OF THE CASE.......................................................3

    The Washington Lawsuit........................................................................3

    Julia Duin................................................................................................3

    The Article ..............................................................................................4

        Researching the Article ..................................................................4

        Writing the Article..........................................................................9

        Editing the Article ........................................................................11

    Additional Support for the Article Statement.................................12

    Proceedings Below ...............................................................................15

SUMMARY OF ARGUMENT .......................................................................20

ARGUMENT ..................................................................................................24

    I.     THE DISTRICT COURT'S ORDER GRANTING
           NEWSWEEK'S MOTION FOR SUMMARY JUDGMENT
           SHOULD BE AFFIRMED ...............................................24

        A.     The Satanic Temple Cannot Meet Its Burden Of
             Proving That The Article Statement Is Substantially
             False ................................................................................25

        B.     The Satanic Temple Cannot Show That Newsweek
             Published The Article Statement With Actual Malice ............31

           1.     The district court correctly found that the actual
                malice standard applies to Plaintiff-Appellant's
                claims under the New York anti-SLAPP law.................31

2.    The district court correctly found that Plaintiff-
Appellant could not establish actual malice ..................35

3.    The district court correctly applied the actual
malice standard ...............................................................45

II.    THE DISTRICT COURT'S ORDER GRANTING DUIN'S
MOTION TO DISMISS SHOULD BE AFFIRMED ........................47

A.    Plaintiff-Appellant Cannot Establish Specific
Jurisdiction Because Duin Has Not Purposefully
Availed Herself of the Forum ....................................49

B.    The Exercise of Jurisdiction Over Duin Would Violate
Due Process..............................................................55

CONCLUSION .........................................................................57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Apex Oil Co. v. DiMauro*,
  1990 WL 124588 (S.D.N.Y. Aug. 21, 1990)......................................28

*Atas v. New York Times Co.*,
  No. 22-CV-853, 2023 WL 5715617 (S.D.N.Y. Sept. 5, 2023) ..........................34

*Baiocco v. AEP RSD Inv'rs, LLC*,
  No. 21-2475-CV, 2022 WL 2902081 (2d Cir. July 22, 2022) ..........................25

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007)........................................ 47, 49, 50, 55

*Biro v. Conde Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012) ...............................................26

*Bonnell v. Lorenzo*,
  241 F.3d 800 (6th Cir. 2001) .......................................................34

*Brimelow v. New York Times Co.*,
  2021 WL 4901969 (2d Cir. Oct. 21, 2021)............................ 36, 43, 44

*Brownstone Inv. Grp. LLC v. Bonner & Partners, LLC*,
  2021 WL 3423253 (S.D.N.Y. Aug. 5, 2021).......................................52

*Buckley v. Littell*,
  539 F.2d 882 (2d Cir. 1976)........................................................44

*BYD Co. Ltd. v. VICE Media LLC*,
  531 F. Supp. 3d 810, 826 (S.D.N.Y. 2021), *aff'd*, No. 21-1097,
  2022 WL 598973 (2d Cir. Mar. 1, 2022)...........................................42

*Cabello-Rondon v. Dow Jones & Co., Inc.*,
  720 F. App'x 87 (2d Cir. 2018) ...................................................43

*Celle v. Filipino Rep. Enterprises Inc.*,
  209 F.3d 163 (2d Cir. 2000)........................................................26

*Center for Med. Progress v. Planned Parenthood Fedn. of Am.*,
  551 F. Supp. 3d 320 (S.D.N.Y. 2021) ...........................................33

*Chaiken v. VV Pub. Corp.*,
  119 F.3d 1018 (2d Cir. 1997)................................................ 37, 48, 56

*Church of Scientology Int'l v. Behar*,
238 F.3d 168 (2d Cir. 2001) ........................................................... 38, 41

*Coleman v. Grand*,
523 F. Supp. 3d 244 (E.D.N.Y. 2021) ............................................. 33, 35

*Contemp. Mission, Inc. v. N.Y.Times Co.*,
842 F.2d 612 (2d Cir. 1988) ................................................................. 36

*Copp v. Ramirez*,
62 A.D.3d 23 (1st Dep't 2009) ............................................................. 56

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................................. 48

*Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*,
747 F. Supp. 922 (S.D.N.Y. 1990) ....................................................... 52

*Doe v. Skyline Automobiles Inc.*,
375 F. Supp. 3d 401 (S.D.N.Y. 2019) ............................................. 33-34

*Dongguk Univ. v. Yale Univ.*,
734 F.3d 113 (2d Cir. 2013) ................................................................. 38

*Giannetta v. Johnson*,
No. 20-CV-9016, 2021 WL 2593305 ................................................... 49

*Goldfarb v. Channel One Russia*,
442 F. Supp. 3d 649 (S.D.N.Y. 2020) .................................................. 55

*Goldman v. Reddington*,
No. 18-CV-3662, 2021 WL 4099462 (E.D.N.Y. Sept. 9, 2021) ................ 33, 35

*Goodman v. Bouzy*,
No. 21-CV-10878, 2023 WL 3296203 (S.D.N.Y. May 8, 2023) ................ 28-29

*Hansen Realty Dev. Corp. v. Sapphire Realty Grp., LLC*,
104 N.Y.S.3d 59 (1st Dep't 2019) ........................................................ 51

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989) ................................................................. 21, 36, 39

*HLT Existing Franchise Holding LLC v. Worcester Hosp. Grp. LLC*,
994 F. Supp. 2d 520 (S.D.N.Y. 2014) .................................................. 28

*Huggins v. Moore*,
94 N.Y. 2d 296 (1999) .................................................................... 32, 34

v

*Int'l Shoe Co. v. State of Wash.*,
326 U.S. 310 (1945) ................................................................................ 55-56

*Isaly v. Boston Globe Media Partners, LLC*,
No. 21-1330-CV, 2022 WL 121283 (2d Cir., Jan. 13, 2022) ............................40

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)....................................52

*Kesner v. Buhl*,
590 F. Supp. 3d 680 (S.D.N.Y. 2022) ....................................................... *passim*

*Kesner v. Dow Jones & Co., Inc.*,
No. 22-875-CV, 2023 WL 4072929 (2d Cir. June 20, 2023)............................24

*Krauss v. Globe Int'l, Inc.*,
251 A.D.2d 191 (1st Dep't 1998) ........................................................................32

*Kurzon LLP v. Thomas M. Cooley L. Sch.*,
No. 12-CV-8352, 2014 WL 2862609 (S.D.N.Y. June 24, 2014) ......................51

*Leidig v. BuzzFeed, Inc.*,
371 F. Supp. 3d 134, 143 (S.D.N.Y.),
*aff'd*, 788 F. App'x 76 (2d Cir. 2019)................................................... 25, 26, 27

*Lindberg v. Dow Jones & Co., Inc.*,
No. 20-CV-8231, 2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021) ......................32

*Loeb v. New Times Commc'ns Corp.*,
497 F. Supp. 85 (S.D.N.Y. 1980) ............................................................... 42, 43

*Masson v. New Yorker Mag., Inc.*,
501 U.S. 496 (1991)................................................................................... 26, 36

*McDougal v. Fox News Network, LLC*,
489 F. Supp. 3d 174 (S.D.N.Y. 2020) ................................................................44

*Palin v. New York Times Co.*,
940 F.3d 804 (2d Cir. 2019)....................................................................... 38, 44

*Palin v. New York Times Co.*,
588 F. Supp. 3d 375 (S.D.N.Y. 2022) ................................................................25

*Prince v. Intercept*,
634 F. Supp. 3d 114 (S.D.N.Y. 2022) ................................................................35

*Pulvers v. First UNUM Life Ins. Co.*,
    210 F.3d 89 (2d Cir. 2000)........................................................................46

*Realuyo v. Villa Abrille*,
    No. 01-CV-10158, 2003 WL 21537754 (S.D.N.Y. July 8, 2003)......................50

*Reeves v. Associated Newspapers, Ltd.*,
    232 A.D.3d 10 (1st Dep't 2024)................................................................ 34, 35

*Reich v. Lopez*,
    38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014),
    *aff'd*, 858 F.3d 55 (2d Cir. 2017)............................................................. 48, 53

*Sackler v. Am. Broad. Companies, Inc.*,
    144 N.Y.S.3d 529 (N.Y. Cty. 2021) .................................................................35

*Schultz v. Safra Nat. Bank of New York*,
    377 Fed. Appx. 101 (2d Cir.2010)...................................................................48

*Smith v. City of New York*,
    No. 14-CV-9069, 2016 WL 5793410 (S.D.N.Y. Sept. 30, 2016),
    *aff'd*, 697 F. App'x 88 (2d Cir. 2017)............................................................40

*Sovik v. Healing Network*,
    244 A.D.2d 985 (4th Dep't 1997)............................................................. 52-53

*SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*,
    18 N.Y.3d 400 (2012) ..................................................................... *passim*

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)...................................................................................43

*Stern v. Cosby*,
    645 F. Supp. 2d 258 (S.D.N.Y. 2009) ...................................................... 37, 40

*Tannerite Sports, LLC v. NBCUniversal Media LLC*,
    135 F. Supp. 3d 219, 234 (S.D.N.Y. 2015), *aff'd sub nom.*
    864 F.3d 236 (2d Cir. 2017)......................................................... 24, 25, 26, 54

*Todd v. Lovecruft*,
    No. 19-CV-01751, 2020 WL 60199 (N.D. Cal. Jan. 6, 2020)...........................34

*Trachtenberg v. Failedmessiah.com*,
    43 F. Supp. 3d 198 (E.D.N.Y. 2014) ....................................................... 50, 54

*Tzougrakis v. Cyveillance, Inc.*,
    145 F. Supp. 2d 325 (S.D.N.Y. 2001) .............................................................37

*United Fed'n of Churches v. Johnson*,
    522 F. Supp. 3d 842 (W.D. Wash. 2021), *recons. denied*,
    2022 WL 1093025 (W.D. Wash. 2022), *aff'd in part, vacated*
    *in part and remanded,* 2023 WL 8271978 (9th Cir., Nov. 30, 2023) ...................3

*Watson v. NY Doe 1*,
    No. 19-CV-533, 2023 WL 6540662 (S.D.N.Y. Oct. 6, 2023).............................33

## Statutes & Other Authorities:

U.S. Const., Amend. I ........................................................................... 26, 45, 46, 49

CPLR § 76-a.......................................................................................................17

CPLR § 76-a(1)(a) .............................................................................................18

CPLR § 76-a(1)(d) .............................................................................................18

CPLR § 302........................................................................................................ 22, 48

CPLR § 302(a)(1)......................................................................................... *passim*

Dr. Joseph Laycock, *Speak of the Devil: How The Satanic Temple is*
    *Changing the Way We Talk about Religion* ....................................................8, 13

F.R.E. 801(c).....................................................................................................40

F.R.E. 801(d)(2).................................................................................................27

N.Y. Civ. Rights Law § 76-a(2)..........................................................................46

## COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Whether Plaintiff-Appellant failed to satisfy its burden of demonstrating "substantial falsity" where the allegedly defamatory statement at issue accurately reflected the experience of one former member who testified that he left The Satanic Temple because he heard about accounts of sexual abuse being covered up, his statement was supported by the testimony and accounts of numerous other former members of The Satanic Temple, and The Satanic Temple admitted that former members accused the organization of covering up an allegation of sexual assault. On this issue, the district court held that it could not conclude as a matter of law whether the statement was false and defamatory or true and not defamatory.

2.      Whether the district court correctly held that Plaintiff-Appellant failed to satisfy its burden of demonstrating actual malice, as required under New York's anti-SLAPP statute, where Newsweek relied on the reputation and experience of Julia Duin, a veteran reporter, in publishing the allegedly defamatory statement at issue, had no reason to doubt the accuracy of her reporting, and Duin, herself, believed the statement to be "inherently plausible," found the source to be reliable, and heard similar allegations from other sources.

3.      Whether the district court correctly dismissed Julia Duin, a Washington resident, for lack of personal jurisdiction where, in writing the article at issue, she did not conduct any research or other activity in New York, did not interview any New York residents or travel to New York, played no role in determining when or where the article would be published, and where the article, itself, reported on litigation in Washington between Washington residents and The Satanic Temple, a Massachusetts corporation, and does not mention New York.

## COUNTERSTATEMENT OF THE CASE

### The Washington Lawsuit

Plaintiff-Appellant The Satanic Temple, Inc. ("Plaintiff-Appellant" or "The Satanic Temple") is an "atheistic religious corporation" with chapters throughout the United States. A12 ¶ 6, A30–31 ¶¶ 87, 89, 90. In 2020, The Satanic Temple sued several former members of its Washington Chapter for defamation and "cyberpiracy" in the United States District Court for the Western District of Washington (the "Washington Lawsuit"). *United Fed'n of Churches v. Johnson*, 522 F. Supp. 3d 842 (W.D. Wash. 2021), *recons. denied*, 2022 WL 1093025 (W.D. Wash. 2022), *aff'd in part, vacated in part and remanded,* 2023 WL 8271978 (9th Cir., Nov. 30, 2023); A15 ¶ 19. The defendants in the Washington Lawsuit are former members David Alan Johnson, Leah Fishbaugh, Mickey Meeham (a/k/a Joshua Calavera), and Nathan Sullivan. *See gen., Johnson*, 522 F. Supp. 3d 842. After leaving The Satanic Temple, they formed a group called Queer Satanic, which operates a social media account under the handle @QueerSatanic. *Id.*; A240 at 19:16–19; A267 at 6:15–17.

### Julia Duin

Julia Duin is a freelance journalist who focuses on religion reporting and worked for Newsweek as an independent contractor from September 1, 2021 until February 2023. SA1 at ¶ 3; A1055 at 78:1-14. Duin was not a Newsweek

employee. SA1 at ¶ 4. Duin is a resident of Washington, does not own property in New York, does not have a bank account in New York, and does not pay New York taxes. SA1-2 at ¶¶ 2, 9. She has not been to New York since on or about 2011. SA2 at ¶ 10.

Duin has been a journalist for over forty-five years, and has received multiple awards for her reporting, including awards from the Religion News Writers Association, the Associated Press, and the Religion Communicators Council. A262 at 183:10–12; A228–29 at 11:13–12:9. She has served as a visiting journalism professor at the University of Alaska at Fairbanks, a visiting professor at Union University, an adjunct professor at the University of Maryland, and an adjunct professor at Patrick Henry University. A231–32 at 15:22–16:11. Duin has also published six books about religion and has a master's degree in religious studies from Trinity Episcopal School for Ministry. A231 at 15:5–21; A237 at 88:4–19.

### The Article

#### *Researching the Article*

After the defamation claims were dismissed by the district court in the Washington Lawsuit, Duin received an email from Kevin Jones, a journalist with the Catholic News Agency, stating that former members of The Satanic Temple had told him about The Satanic Temple's alleged use of "defamation lawsuits . . .

4

to harass internal critics." A233–34 at 37:16–38:9; A275. Jones's email also stated that former members had told him about "allegations of [The Satanic Temple] leadership sexually exploiting members or failing to respond to harassment/sexual assault allegations against chapter heads." A275. Following this lead, Duin reached out to the members of Queer Satanic and communicated with them via their @queersatanic social media accounts and in person. A238 at 91:6–21; A240 at 93:3–19; A278–84.

During Duin's research she learned that "there [were] multiple reports among . . . former members [of The Satanic Temple], of sexual abuse/harassment." A263 at 186:19-23. Nathan Sullivan told Duin that the Queer Satanic members had been removed from the Washington Chapter because they were witnesses to an ethics complaint, and that the ethics complaint involved the mismanagement of a sexual harassment claim within the Washington Chapter. A269 at 16:3–12; A271–72 at 22:11–23:21; A286. Sullivan also sent Duin social media posts between a member of The Satanic Temple and The Satanic Temple's leadership, in which the member claimed that she was removed from groups within The Satanic Temple after publicly criticizing the behavior of Satanic Temple leaders for, among other things, making inappropriate sexual comments. A278–84. Johnson confirmed to Duin that he had also been a witness to a sexual harassment complaint within The Satanic Temple. A289–30 at 10:23–11:13.

5

Duin also emailed Scott Malphas and Jinx Strange (a/k/a Paul Millirons), other former members of The Satanic Temple, and asked both if they would "mind telling [her] what chapter you were part of . . . when you left [The Satanic Temple] and why." A296; A312. Duin did not mention sexual abuse in either email. A296; A312. Malphas responded to Duin's email that he would be "happy to share [his] experience with her," and further stated:

> There was an account of sexual assault, and the response was "we are looking into it," then never followup [*sic*]. One individual was in charge of on-boarding new chapters . . . turns out they were using their authority to coerce potential chapter leaders into having sex. That person was protected by the national council and executive leadership, for months . . . until they finally "stepped down" and the allegations of statutory rape were never addressed.
> [. . .]
> The nail in the coffin for me was when I found out that the national council had been reviewing and approving official events that included orgies. [. . .] Well, shortly after the first celebration, national council released "sex-positive guidelines." It was clear that this was in response to the complaints of sexual assault; an effort to shed responsibility.

A295–96.

Strange also wrote a lengthy response to Duin, in which he stated that he had heard "concerning" stories from other members of The Satanic Temple, and that:

> A lot of times those things were anecdotal or unsupported, but sometimes they were very concerning. Screenshots or images of things and connections I hadn't seen before. Leaders posing happily with major alt-right media figures. Accounts of sexual abuse being covered up in ways that were more than anecdotal. Dozens of people kicked out for asking for financial records from this alleged-non-profit organization.

6

A311. At his deposition, Strange testified that by "sexual abuse" he meant "unwanted sexual advances or contact." A315 at 10:17–20. He further testified that he left The Satanic Temple after hearing accounts of sexual abuse and "observ[ing] behavior on social media by people [he] understood to be leaders in [The Satanic Temple]," which appeared to be efforts to cover up those kinds of allegations. A316 at 11:7–15. He said he observed behavior that he "would not consider to be ethical or responsible . . . in response to these sort of [sexual abuse] allegations" and that "lent more credibility to those claims." A317 at 14:13–18.

At her deposition, Duin testified that she "found what [Strange] said to be inherently plausible" because it was consistent with other statements made by members of Queer Satanic and by Malphas. A247–49 at 121:23–123:9. She also considered Strange to be credible because other allegations he made about The Satanic Temple were corroborated by her research. *See* A248 at 122:18-23 ("I mean, everything checked out . . . like the sentence before that there was some connection to the alt-right or figures. I certainly had heard many complaints about that . . . ."). Duin also testified that she found the sources who told her about allegations of sexual abuse within The Satanic Temple credible because they were "true believers" when they were part of The Satanic Temple, but had observed things within the organization concerning enough to make them leave. A260–61 at 175:24–176:4 ("Because [Scott Malphas] was a true believer when he came in, and

7

so was Jinx. And they were all true believers, and they saw stuff they didn't like, and they left. They all . . . wanted to believe. They all came in, and they believed in the organization, and they left not believing in it.").

Duin also interviewed Lucien Greaves, spokesperson and co-founder of The Satanic Temple as part of her research. A245 at 103:13; A246 at 104:4–7; A179 at 14:10–12. During Duin's communications with Greaves, Greaves generally denied claims against The Satanic Temple. A250 at 124:15–18; A252 at 126:17–24. Duin asked Greaves about Malphas's complaints that The Satanic Temple's national council had been "approving official events that included orgies." A321. In response, Greaves stated that "[n]o events are compulsory to continued membership within [The Satanic Temple]." *Id.* Duin did not ask Greaves about Strange's statement regarding accounts of sexual abuse because she felt Greaves's general denial of allegations against The Satanic Temple, and his response to questions about "official orgies," was a "fair rebuttal" to Strange's statement as well. A253 at 127:5–18.[1]

Duin did not travel to New York in connection with the Article, did not interview any sources for the Article that, to her knowledge, resided in New York,

---

[1] As part of her research, Duin also interviewed Matt Kezhaya, The Satanic Temple's general counsel, and, at Greaves's suggestion, Dr. Joseph Laycock, the author of *Speak of the Devil: How The Satanic Temple is Changing the Way We Talk about Religion*. A245–46 at 103:22–104:8; A258 at 157:12–15; A322.

and played no role in when or where the Article would be published. SA2 at ¶¶ 6–

8.

### Writing the Article

Julia Duin wrote the Article. It begins:

> Can you defame a religion, especially one that doesn't believe in God, Satan or the supernatural?

> The answer to that question could cost four former members of The Satanic Temple (TST) more than $140,000 in damages, including "reputation losses," in a civil lawsuit that has dragged on for more than a year and a half.

A45. The Article then sets forth the claims in the Washington Lawsuit, provides

some background on The Satanic Temple's founding and history, and describes the

involvement of each defendant in the organization. A45–62. The Article also

outlines other recent legal disputes involving The Satanic Temple, reports on

complaints other former members have made about The Satanic Temple's practices,

and includes responses from Greaves and Kezhaya. *Id.*

As background, and as part of the reporting on other complaints made by

other former members, the Article includes Jinx Strange's quote that he ceased his

involvement with The Satanic Temple after he heard "[a]ccounts of sexual abuse

being covered up in ways that were more than anecdotal" (the "Article

Statement"). A59. Duin testified that, while she found the Article Statement

"inherently plausible," she did not intend to accuse The Satanic Temple of any

9

wrongdoing by including the Article Statement in the Article. A256–57 at 134:23–135:1; *see also* A241 99:13–15 ("[The Article] was not an investigation into the sexual abuse or the finances or the alt-right figures."). Rather, Duin included the Article Statement "[b]ecause it gave a general view of the various controversies surrounding The Satanic Temple," and she wanted to acknowledge Strange's "perception of what The Satanic Temple was about. What he thought, what his experience was, what he was hearing from other people." A242 at 100:1–2; A244 102:5–9.

Two paragraphs after the Article Statement, the Article includes Greaves's statement that he considers complaints about The Satanic Temple "old news" and that, "We get this litany of senseless disparaging claims against us that says we're a religious group acting in a nefarious manner." A60. Duin put Greaves's general denial about claims made against The Satanic Temple after the Article Statement because she believed Greaves's denial applied to the "various accusations" made against The Satanic Temple, including the Article Statement. A254–55 at 128:20–129:7.

The Article contains no references to New York, or to any activity conducted by The Satanic Temple in New York. A44–62.

### *Editing the Article*

Nancy Cooper, Newsweek's editor-in-chief at the time, edited the Article before it was published by Newsweek. A328 at 4:20–22; A335 at 155:17–19. Cooper was not familiar with The Satanic Temple prior to hearing Duin's pitch for the Article, but she had "faith in [Duin's] reporting" and saw no evidence Duin was biased in her reporting on The Satanic Temple. A333–34 at 145:22–146:5; A349 at 222:6–17; A351 at 233:4–7. Indeed, Newsweek hired Duin as a religion reporter because "[s]he was an experienced religion reporter," who had "won [ ] awards," and was "interested in the topic and knew about it." A330 at 70:6–13. Regarding Duin's experience, Cooper recalled that Duin "clearly knew what she was talking about. She was an experienced reporter . . . [S]he had been a reporter for other news outlets and covered religion for them." A345 at 203:8–23.

According to Cooper, Duin typically did not provide her with the notes for her articles because, in Cooper's opinion, Duin "is a very experienced senior person who was hired to be on this [religion] beat who knows this beat, and I [Cooper] don't re-report stories [because] [t]hat's not an editor's role." A336 at 157:16–23. Newsweek generally relied on Duin to fact check her articles. A332 at 140:21–24; A336 at 157:16–23. Indeed, Duin represented to Cooper that she had "fact-checked this [Article] until [her] eyes were bleary." A340 at 183:7–17; *see also* A354 ("Whew . . . have factchecked until I am buggy-eyed.").

11

Cooper understood the Article Statement to be a report of something people were talking about, and not a legal allegation or an accusation of guilt. A347 209:5–14. In that respect, she believed the Article Statement to be true, and believes that Newsweek did not intend to, and did not, defame The Satanic Temple by publishing the Article Statement. A341 at 184:17–21; A350 at 229:6–8.

### **Additional Support for the Article Statement**

Testimonial and documentary evidence further support the Article Statement. Specifically, Strange recalled that: 1) a member of the Washington Chapter was removed from the chapter after the member came forward with an allegation of sexual abuse; 2) a female member of the Austin Chapter who made an allegation of sexual abuse, "possibly along with other supporters," was removed from the chapter; and, 3) a friend of Strange's confided in him that she had been sexually abused at a Satanic Temple party. A319 at 25:1–16.

Similarly, David Johnson testified that he knew of a former member who left because the member was "made to feel uncomfortable by a much older member" but it "was non-addressed for months." A290 at 11:7–13. Johnson also recalled that a member of the Austin Chapter claimed she was sexually assaulted by a chapter head. A291 at 26:9–22. Johnson further testified that Satanic Temple members had spoken about feeling uncomfortable because a co-owner of The

Satanic Temple had solicited nudes for a holiday called "Lupercalia." A291–92 at 26:24–27:5.

In addition, former Satanic Temple member Jex Blackmore publicly accused The Satanic Temple of failing to address sexually abusive behavior in a 2018 article published on Medium. A214 at 130:6–15; A219–20 at 135:18–136:13; A357–363. Specifically, she claimed to have "witnessed male members of the organization exploit their position and influence to behave inappropriately and disrespectfully towards women" and that she personally "experienced harassment and abuse from members who have now left the organization." A360; *see also* A374 (Dr. Laycock's book, *Speak of the Devil*, references Blackmore's article and states that, "[Blackmore] reported experiencing harassment and abuse while in [The Satanic Temple]"). The Satanic Temple was aware of Blackmore's claims but did not investigate them. A189 at 74:4–8. There are also numerous social media posts in which individuals purporting to be former members of The Satanic Temple have publicly recounted experiences of sexual abuse within The Satanic Temple and expressed their frustration with how such complaints were handled. A382–411.

The Satanic Temple has also admitted that there have been several direct accusations of sexual abuse by or against members of The Satanic Temple. A200–01 at 73:13–74:3; A204-05 at 110:24-111:25; A378; A380. For example, The

Satanic Temple admitted that a former member of the San Jose Chapter complained that a member of the leadership team made unwanted advances towards her, which included discussing his genitals. A380. The Satanic Temple acknowledged that the accuser was unhappy with how her complaint was handled, which "led to some frustration [for The Satanic Temple] because . . . you never want to tell somebody who is filing a complaint like not to . . . but at the same time sometimes looking into things takes time." A200–01 at 73:13–74:3.

The Satanic Temple also admitted that head of the Austin Chapter was accused of sexually assaulting another member, and other members accused The Satanic Temple of "covering up" the incident. A378. According to The Satanic Temple, a friend of the victim told The Satanic Temple National Council about the alleged assault, and the National Council encouraged the victim to report the incident to the police. *Id.*; A204-05 at 110:24-111:25. In the following months, the victim's friends became unhappy with The Satanic Temple's lack of a further response to the allegations, and "threatened to go public . . . with the claim that [The Satanic Temple] was covering up these accusations." A205 at 111:5–25. Following these threats, the alleged perpetrator "stepped down" from his leadership position. A205 at 111:5–25; A208 at 114:10–23; A209 at 115:5–12; A211 at 117:4–6, 117:12–20; A378. However, the alleged victim and her friends continued to raise the issue at Chapter meetings and were removed from the Austin

14

Chapter as a result. A208 at 114:10–23; A209 at 115:5–12; A211 at 117:4–6, 117:12–20.

In addition to The Satanic Temple's admission, Nathan Sullivan testified that his removal from the Washington Chapter was an effort to cover up a sexual harassment complaint:

> My expulsion from [The Satanic Temple] was a part of . . . covering up the ethics complaint where the [sexual] harassment was an underpinning factor. The chapter head at the time explicitly said that the—the reason for my removal was because I was a witness to that e-mail [complaint].

A269 at 16:3–8.

Finally, although The Satanic Temple was formed in or around 2013, it lacked a formal process for handling complaints until 2020, including complaints involving sexual abuse. A177–78 at 6:23–7:2; A180 at 19:16–19; A194 at 12:20–25; A195 at 13:11–16; A198–99 at 25:24–26:15; A202–03 at 82:19–83:12. Thus, there were complaints prior to 2020 that were not formally addressed. A203 at 83:9–12.

**Proceedings Below**

The Satanic Temple originally brought this lawsuit against Duin and Newsweek alleging that twenty-two statements in the Article were defamatory. A11–43. Duin moved to dismiss The Satanic Temple's claims against her for lack of personal jurisdiction, and both Duin and Newsweek moved to dismiss the action

15

for failure to state a claim. A150. On March 8, 2023, the district court granted Duin's motion, holding that it lacked jurisdiction over her. A152–55, 169. Specifically, the district court found that The Satanic Temple failed to establish that Duin had transacted any business within the state as required to exercise specific personal jurisdiction. A153–54. The Satanic Temple admitted that the "Article refers to conduct that took place outside of New York and [did] not contend that Duin conducted any research in New York, interviewed any sources in New York, or otherwise drafted any portion of the Article in New York." A154. As the district court concluded, The Satanic Temple "failed to allege that Duin ha[d] engaged in *any* activity in the forum." *Id.* The district court also rejected The Satanic Temple's contention that Duin was subject to personal jurisdiction in New York due to her alleged employment by Newsweek, a New York company, because The Satanic Temple failed to "provide any reasoning or case law to support that conclusion." *Id.*

The district court also granted, in part, Newsweek's motion, holding that twenty-one of the twenty-two allegedly defamatory statements were not actionable. A158–69. The district court held that the one remaining statement, the Article Statement, was "plausibly defamatory" and survived the motion to dismiss. A162.

The parties subsequently stipulated, and the district court ordered, that Newsweek Digital LLC, not Newsweek Magazine LLC, was the proper defendant,

and that the lawsuit should proceed against Newsweek Digital LLC as the "sole defendant." SA4-5. Thereafter, Duin was "terminated" as a party to the case.

On March 26, 2025, following the close of discovery, Newsweek filed a Motion for Summary Judgment, in which it argued that because The Satanic Temple could not satisfy its burden of demonstrating by clear and convincing evidence that the Article Statement was substantially false, and because it could not prove actual malice, The Satanic Temple's defamation claim should be dismissed. A1124. The Satanic Temple also filed a Motion for Partial Summary Judgment, in which it argued that the Article Statement was false, the actual malice standard did not apply and, if it did apply, The Satanic Temple had established actual malice. *Id.*

The district court granted Newsweek's Motion for Summary Judgment and denied The Satanic Temple's Motion for Partial Summary Judgment. A1117–1143. Regarding substantial truth, the court held that the Article Statement was "susceptible to multiple meanings, some of which are non-defamatory," and therefore the court could not "conclude as a matter of law whether the Article statement is false and defamatory or true and not defamatory." A1128.

On the issue of actual malice, the district court first found that the substantive provisions of New York's anti-SLAPP law, N.Y. CPLR § 76-a, applied to The Satanic Temple's claim. A1130. Under the anti-SLAPP law, "[i]n an action

17

involving public petition and participation," which includes public communications "in connection with an issue of public interest," the plaintiff must establish that the relevant statement was published with actual malice. *Id.* (citing N.Y. CPLR § 76-a(1)(a)). The district court recognized that the term "public interest" should be "construed broadly," and that "with the rise of the #MeToo movement and the public's growing awareness of and activism surrounding the topics of sexual misconduct, harassment, and abuse," the Article Statement constituted an issue of public interest. A1131 (citing N.Y. CPLR § 76-a(1)(d)). Because the New York anti-SLAPP law applied, the district court concluded that The Satanic Temple had to demonstrate, by clear and convincing evidence, that Newsweek published the Article Statement with actual malice. A1132.

The district court noted that actual malice is a subjective standard that requires a plaintiff to prove that the defendant knew the statement at issue was false or had a "high degree of awareness" that it was probably false, and that "a court will typically infer actual malice from objective facts." A1133. As an initial matter, the district court rejected The Satanic Temple's argument that the only evidence needed to show actual malice was Newsweek's alleged departure from its Editorial Guidelines because a failure to follow editorial guidelines cannot, without more, satisfy the actual malice requirement. A1134. The district court then analyzed the conduct underlying the alleged departure from the Editorial

18

Guidelines to determine if that evidence could be sufficient to establish actual malice. A1135. However, the district court found that "[v]iewing in the aggregate the evidence marshalled by The Satanic Temple there is not sufficient evidence in the record to support a finding that Newsweek made the Article Statement with actual malice." A1142–43. Specifically, the district court found that there was "no evidence that [former editor-in-chief Nancy] Cooper had any obvious reason to doubt the Article Statement" and that "the only evidence in the record [was] that Cooper did not have a reason to doubt the sources on which Duin relied." A1137. Similarly, the record evidence demonstrated that Duin "did not have any serious doubts about the truth of the Article Statement," "relied on a whole multitude of sources," and "was not faced with subjective doubts that would have required her to investigate further." A1139–42. Finally, the court found that The Satanic Temple's claims that Cooper and Duin were biased against The Satanic Temple did not satisfy The Satanic Temple's burden because even if the evidence demonstrated bias, which was questionable, evidence of bias is insufficient to support actual malice. A1138–39, 1142. Thus, "a reasonable jury could not conclude by clear and convincing evidence that Newsweek, through Cooper or Duin, made the Article Statement with actual malice" and therefore the court granted Newsweek's Motion for Summary Judgment. A1143.

## SUMMARY OF ARGUMENT

Because the documents and testimony elicited in discovery demonstrate that The Satanic Temple cannot meet its burden of demonstrating by clear and convincing evidence that the Article Statement is substantially false, and that Newsweek published it with actual malice, the district court correctly granted Newsweek's Motion for Summary Judgment.

First, The Satanic Temple cannot prove that the Article Statement is substantially false because, in context, the statement merely reflects the experience of one former member, the truth of which the former member has confirmed in discovery. Moreover, even divorced from its context, Plaintiff-Appellant cannot demonstrate it is substantially false that there were rumors of sexual abuse within The Satanic Temple being covered up because four former members confirmed that they heard about claims of sexual abuse being covered up, another former member wrote a long article about her experiences of sexual abuse that The Satanic Temple admittedly did not investigate, members of one chapter of The Satanic Temple accused Plaintiff-Appellant of covering up accusations of sexual assault, several former members also recounted on social media their experiences of sexual abuse that they claim were met with inaction or retaliation, and one of the former members involved in litigation with The Satanic Temple testified that he was expelled from the Washington Chapter because he was a witness to a sexual

harassment complaint. Finally, Plaintiff-Appellant has admitted that a member of another chapter of The Satanic Temple reported that someone in leadership had made unwanted advances toward her and discussed his genitals, and that she was frustrated by The Satanic Temple's inaction, and that members of another chapter were removed from the chapter when they complained about allegations of sexual assault against another member. Plaintiff-Appellant has also admitted that prior to 2020 it lacked a formal process for reporting complaints, and therefore it could not possibly determine whether and how complaints of sexual abuse were handled prior to that time.

Second, New York law requires The Satanic Temple to prove that Newsweek published the Article Statement with actual malice – i.e., with knowledge of falsity or reckless disregard for falsity. An alleged failure to investigate, or even "an extreme departure from professional standards," does not satisfy the actual malice standard. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989). Moreover, the relevant inquiry under the actual malice standard is Newsweek's "state of mind" – not the state of mind of the author of the allegedly defamatory publication. Here, there is no evidence – and The Satanic Temple can point to none – that Newsweek entertained serious doubts about the truth of the Article Statement. Rather, Newsweek relied on the reputation and experience of Julia Duin, a veteran religion reporter, and had no reason to doubt

21

the accuracy of her reporting. Moreover, Duin, herself, believed the Article Statement to be "inherently plausible," found the former member to be a reliable source, and heard similar allegations from other sources.

Thus, because The Satanic Temple cannot satisfy its burden of demonstrating by clear and convincing evidence that the Article Statement is substantially false, and because it cannot prove actual malice, the district court's order granting Newsweek's Motion for Summary judgment and dismissing The Satanic Temple's claim should be affirmed.

The district court also correctly granted Duin's Motion to Dismiss for lack of personal jurisdiction. The Satanic Temple's claim that Duin was an employee of Newsweek is not sufficient to establish jurisdiction. Duin did not "transact business" in New York as required to establish jurisdiction under New York's long-arm statute, CPLR § 302, where she is a resident of Washington whose only connection to New York was writing the Article as a freelance reporter for a nationally-available online news publication that happens to have offices in New York. Additionally, The Satanic Temple cannot demonstrate that there was a "substantial relationship" between any New York activities by Duin and its defamation claim in this case. The Article reports on litigation in Washington between Washington residents and The Satanic Temple, a Massachusetts corporation, and does not mention New York. Duin did not conduct any research

or other activity in New York in preparing the Article, did not interview any New York residents or travel to New York for the Article, and played no role in determining when or where the Article would be published. Thus, the district court's order dismissing Duin should be affirmed.

# ARGUMENT[2]

## I. THE DISTRICT COURT'S ORDER GRANTING NEWSWEEK'S MOTION FOR SUMMARY JUDGMENT SHOULD BE AFFIRMED.

In order to prevail on a defamation claim, a plaintiff must prove that the statement it challenges is "substantially false" and was made with the requisite degree of fault. *See Kesner v. Dow Jones & Co., Inc.*, No. 22-875-CV, 2023 WL 4072929, at *1 (2d Cir. June 20, 2023) (setting out required elements of a defamation claim); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017) ("To satisfy the falsity element of a defamation claim, plaintiff must allege that the complained of statement is 'substantially false.'") (quotations omitted). Under New York law, in cases involving speech on a matter of public concern, the plaintiff must prove actual malice on the part of the publisher. *See Kesner v. Buhl*, 590 F. Supp. 3d 680, 693 (S.D.N.Y. 2022) (noting that courts have "uniformly found" that the actual malice standard under New York's anti-strategic litigation against public participation ("anti-SLAPP") law applies to diversity actions) (citing cases). Here, the district court's order dismissing The Satanic Temple's defamation claim should be affirmed for two

---

[2] Julia Duin is not currently an Appellee in this case, and Plaintiff-Appellant's Motion to Change the Caption and add Duin as an Appellee, which Newsweek opposes, is still pending. Dkt. 31.2. If that motion is granted, and Duin is retroactively added as an Appellee, Duin adopts the arguments set forth in this Brief made by Newsweek.

independent reasons: 1) The Satanic Temple cannot prove that the Article Statement is substantially false; and 2) The Satanic Temple cannot prove that Newsweek published the Article Statement with actual malice.

### A. The Satanic Temple Cannot Meet Its Burden Of Proving That The Article Statement Is Substantially False.

Although the district court dismissed Plaintiff-Appellant's Complaint on actual malice grounds, the dismissal should be affirmed for the independent reason that The Satanic Temple cannot meet its burden of proving that the Article Statement is substantially false. *See Baiocco v. AEP RSD Inv'rs, LLC*, No. 21-2475-CV, 2022 WL 2902081, at *1 (2d Cir. July 22, 2022) ("It is well-settled that this [C]ourt may affirm on any grounds for which there is a record sufficient to permit conclusions of law.") (citation omitted). The Satanic Temple bears the burden of proving that the Article Statement is "substantially false." *See Tannerite Sports, LLC*, 864 F.3d at 242; *Leidig v. BuzzFeed, Inc.*, 371 F. Supp. 3d 134, 143 (S.D.N.Y.), *aff'd*, 788 F. App'x 76 (2d Cir. 2019) ("Despite truth often being framed as a defense to [defamation], the burden of proving the falsity of a statement rests with the plaintiff."). Substantial falsity must be proven by clear and convincing evidence. *Palin v. New York Times Co.*, 588 F. Supp. 3d 375, 399 (S.D.N.Y. 2022), *vacated and remanded on other grounds,* 113 F.4th 245 (2d Cir. 2024); *see also Leidig*, 371 F. Supp. 3d at 144 ("Although such bland cryptic claims of falsity supported by the credibility of a witness might be sufficient to

establish a proposition in other civil cases, the First Amendment demands more.") (citation omitted).

"[W]here the substance, the gist, or the sting of a statement is true, it cannot be libelous." *Leidig*, 371 F. Supp. 3d at 143 (quotations omitted); *see also Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) ("[T]he statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.") (quotations omitted). In reviewing the statement, a court "must give the disputed language a fair reading in the context of the publication as a whole and construe it as the intended readership would." *Leidig*, 371 F. Supp. 3d at 143 (citation omitted); *see also Tannerite,* 864 F.3d at 243 (In reviewing an allegedly defamatory statement "[t]he entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader."); *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) ("Challenged statements are not to be read in isolation, but must be perused as the average reader would against the whole apparent scope and intent of the writing."); *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) ("[A] court should not render statements actionable by giving them a strained or artificial construction.") (quotations omitted).

Here, no matter how the Article Statement is read, no reasonable jury could find by clear and convincing evidence that the Article Statement is substantially

false. First, when read in context, the Article Statement merely asserts that a former member of The Satanic Temple, Jinx Strange, was no longer involved with The Satanic Temple in part because he heard about accounts of sexual abuse being covered up. A59. In fact, Strange confirmed that hearing of such allegations was one reason he left The Satanic Temple. A316 at 11:7–15; A317 at 14:13–18. Thus, given Strange's testimony, The Satanic Temple cannot prove that the Article Statement is substantially false. *See Leidig*, 371 F. Supp. 3d at 146 (finding plaintiff failed to show statement in an article was false where "[t]he most straightforward reading" of the statement was "simply as a summary of [another outlet's] findings" and the plaintiff could not demonstrate that the summary of the findings was inaccurate, regardless of the truth of the underlying findings).

Second, even divorced from its context, it is substantially true that within The Satanic Temple members had heard "[a]ccounts of sexual abuse being covered up in ways that were more than anecdotal." The Satanic Temple admitted that members of the Austin Chapter threatened to "go public" with the claim that The Satanic Temple was "covering up" accusations of sexual assault against a Chapter Head.[3] A205 at 111:5–25. Sullivan, Johnson, and Strange testified that they had

---

[3] The statements made by Gregory Stevens as the 30(b)(6) deposition representative for The Satanic Temple are opposing party statements and therefore admissible evidence. F.R.E. 801(d)(2).

heard of claims of sexual abuse within The Satanic Temple resulting in the accuser, witnesses, or supporters being removed from their chapters. A319 at 25:1–16; A290 at 11:5–13; A291–92 at 26:9–27:5; A269 at 16:3-8. Scott Malphas told Duin of "an account of sexual assault" that was not followed up on. A295. Jex Blackmore wrote about her experiences of sexual abuse when she was in The Satanic Temple in her Medium article, and The Satanic Temple admits it did not investigate her claims. A219–20 at 135:18–136:13; A359; A189 at 74:4–8. Several social media posts by former members of The Satanic Temple also publicly recount experiences of sexual abuse within The Satanic Temple and claim that these accounts were met with inaction or retaliation against the victim.[4] A278–84; A382–411. Based on this evidence, The Satanic Temple cannot demonstrate that it is substantially false that there were rumors of sexual abuse within The Satanic Temple being covered up. *See Goodman v. Bouzy*, No. 21-CV-10878, 2023 WL

---

[4] These statements are not inadmissible hearsay because Newsweek does not submit them for the truth of the allegations they make – i.e., whether sexual abuse, in fact, occurred and was covered up – but, rather, to establish that such claims were made and that former members of The Satanic Temple were aware of them. *See HLT Existing Franchise Holding LLC v. Worcester Hosp. Grp. LLC*, 994 F. Supp. 2d 520, 535 (S.D.N.Y. 2014) (guest surveys regarding room cleanliness were non-hearsay where they were not offered for the truth of whether the rooms were clean, but rather to establish that guests had reported that the rooms were not clean); *Apex Oil Co. v. DiMauro*, 1990 WL 124588, at *3 (S.D.N.Y. Aug. 21, 1990) ("[E]vidence that rumors or false reports *were disseminated* is not hearsay when they are not offered for the truth of the rumors but for the fact that rumors were spread.") (emphasis in original).

3296203 at *10 (S.D.N.Y. May 8, 2023), *report and recommendation adopted*, No. 21-CV-10878, 2023 WL 4235851 (S.D.N.Y. June 28, 2023) (statement that defendant "was aware of allegations" that plaintiff had raped someone was substantially true where record demonstrated such rumors in fact existed).

*Goodman* is instructive in this regard. In *Goodman*, plaintiff alleged that defendants published defamatory social media posts claiming he had been accused of rape. 2023 WL 3296203, at *2. However, in a recorded phone call, plaintiff had referenced the "false claims" of rape made against him. *Id.* at *10. In determining whether plaintiff had adequately alleged falsity, the court found that "[defendant] did not allege that [plaintiff] raped someone; [defendant] stated only that he was *aware of allegations* that [plaintiff] had raped someone." *Id.* (emphasis in original). In light of that distinction, the court held that the phone conversation demonstrated that there were, in fact, rumors that plaintiff had raped someone, and it dismissed plaintiff's defamation claim on substantial truth grounds. *Id.*

Finally, the district court's finding that "the Article Statement is susceptible to multiple meanings, some of which are non-defamatory," A1129, overlooked Newsweek's showing that, even accepting The Satanic Temple's interpretation, The Satanic Temple cannot prove by clear and convincing evidence that it is substantially false that allegations of sexual abuse within The Satanic Temple were

29

covered up.[5] Plaintiff-Appellant has admitted that there have been several accusations of sexual abuse against members of The Satanic Temple and that the accuser was unhappy with how The Satanic Temple handled the complaints. A378–80; A200–01 at 73:13–74:3; A204-05 at 110:24-111:25; A208 at 114:10–23; A209 at 115:5–12; A211 at 117:4–20. A member of the San Jose Chapter reported that someone in leadership had made unwanted advances toward her and discussed his genitals, and she was frustrated by the inaction on the part of The Satanic Temple. A380. In the Austin Chapter, members accused The Satanic Temple of covering up a sexual assault claim against a Chapter Head, and those members and the alleged victim were removed from the Chapter when they continued to raise the issue after the Chapter Head had voluntarily stepped down. A378; A204-05 at 110:24-111:25; A208 at 114:10–23; A209 at 115:5–12; A211 at 117:4–20. In addition, Nathan Sullivan testified that his expulsion from the Washington Chapter constituted a cover up because he was removed after becoming a witness to a sexual harassment complaint. A269 at 16:3–15. Finally, The Satanic Temple has admitted that prior to 2020 it lacked a formal process for reporting complaints, and therefore it could not possibly determine whether and

---

[5] The Satanic Temple incorrectly asserts in its Brief that the record would support a finding that the Article Statement is false. App. Br. 16. The district court made no such finding. A1129.

how complaints of sexual abuse were handled prior to that time. A195 at 13:11–16;

A202–03 at 82:19–83:12.

Thus, because Plaintiff-Appellant cannot satisfy its burden of demonstrating

that the Article Statement is substantially false, the district court's order should be

affirmed.

### B. The Satanic Temple Cannot Show That Newsweek Published The Article Statement With Actual Malice.

Even if Plaintiff-Appellant could demonstrate that the Article Statement is

substantially false, which it cannot, the district court correctly dismissed the

Complaint because there is insufficient evidence for a reasonable jury to find that

Newsweek published the Article Statement with actual malice.

#### 1. The district court correctly found that the actual malice standard applies to Plaintiff-Appellant's claims under the New York anti-SLAPP law.

The district court correctly held that the New York anti-SLAPP law requires

the application of the actual malice standard to Plaintiff-Appellant's defamation

claim. Courts have "uniformly found" that the actual malice standard is a

substantive provision of the anti-SLAPP law that applies to diversity actions in

federal court.[6] *Kesner*, 590 F. Supp. 3d at 693 (collecting cases).

---

[6] Plaintiff-Appellant does not dispute that the substantive provisions of the New York anti-SLAPP law apply in diversity cases such as this one. *See, gen.* App. Br.

Under the anti-SLAPP law, the actual malice standard applies to a claim based on "any communication in a place open to the public or a public forum in connection with an issue of public interest." N.Y. CPLR § 76-a(1)(a). The term "public interest" is to "be construed broadly and shall mean any subject other than a purely private matter." N.Y. CPLR § 76-a(1)(d); *see also Kesner*, 590 F. Supp. 3d at 693 ("Matters of 'public concern' include matters of political, social, or other concern to the community, even those that do not affect the general population.") (quotations omitted); *Lindberg v. Dow Jones & Co., Inc.*, No. 20-CV-8231, 2021 WL 3605621, at *8 (S.D.N.Y. Aug. 11, 2021) ("[C]ases where the subject matter was not a matter of legitimate public concern are extremely rare.") (citation omitted).

In asserting that the Article Statement only involves an issue of private concern, Plaintiff ignores the plain language of the statute and points to irrelevant case law. The Article Statement was not about the private sex life of the former husband of a celebrity. App. Br. At 76 (citing *Krauss v. Globe Int'l, Inc.*, 251 A.D.2d 191, 193–94 (1st Dep't 1998)). Nor was the Article "directed only to a limited, private audience." *Id.* at 75 (citing *Huggins v. Moore*, 94 N.Y. 2d 296, 302–03 (1999). Rather, the Article is a report in a major news magazine about a public dispute between The Satanic Temple and its former members, and the Article Statement involves rumors that accounts of sexual abuse were covered up

32

within a national religious organization. A44–62. There can be no doubt that such a report involves a matter of public interest. Indeed, courts have consistently found that allegations of sexual misconduct, harassment, or abuse are matters of public interest. *See Watson v. NY Doe 1*, No. 19-CV-533, 2023 WL 6540662, at *3 (S.D.N.Y. Oct. 6, 2023) ("[C]ourts have found Facebook and LinkedIn posts accusing an individual of sexual assault to be communications concerning an issue of public interest.") (internal marks omitted); *Coleman v. Grand*, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021) (finding that issues of "sexual impropriety and power dynamics in [a given] industry, as in others, were indisputably an issue of public interest"); *Goldman v. Reddington*, No. 18-CV-3662, 2021 WL 4099462, at *4 (E.D.N.Y. Sept. 9, 2021) (concluding that the defendant's online posts accusing [the plaintiff] of sexual assault" and "criticism of the law enforcement investigation of her sexual assault complaint" amounted to an issue of public interest); *Center for Med. Progress v. Planned Parenthood Fedn. of Am.*, 551 F. Supp. 3d 320, 332 (S.D.N.Y. 2021) (statements "made in connection with civil and criminal actions against" plaintiffs published on Twitter and Rewire News were issues of public interest under anti-SLAPP statute); *Doe v. Skyline Automobiles*

*Inc.*, 375 F. Supp. 3d 401, 408 (S.D.N.Y. 2019) ("the public interest in sexual assault and discrimination is very high").[7]

Finally, Plaintiff-Appellant's assertion that the Article Statement cannot involve a matter of public concern because The Satanic Temple is a private figure is meritless. *See* App. Br. at 76–77. Courts applying the amended statute have repeatedly noted that the actual malice requirement applies to matters of public interest regardless of the plaintiff's public figure status. *See Atas v. New York Times Co.*, No. 22-CV-853, 2023 WL 5715617, at *5 (S.D.N.Y. Sept. 5, 2023), *reconsideration denied*, No. 22-CV-853, 2023 WL 8355376 (S.D.N.Y. Dec. 1, 2023), *appeal dismissed*, No. 24-58, 2025 WL 1874027 (2d Cir. Feb. 24, 2025) ("[Plaintiff's] primary counterargument is that the actual malice standard does not apply because she is not a public figure. But that is not relevant: the application of the New York anti-SLAPP statute turns on whether the Defendants' speech was on

---

[7] *See also Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10, 19, (1st Dep't 2024), *leave to appeal dismissed*, No. 2025-254, 2025 WL 2664547 (Sept. 18, 2025) (finding that report on contentious divorce and child custody battle between CEO and his wife involving "allegations of domestic violence" was a matter of public interest); *Huggins v. Moore*, 94 N.Y.2d 296, 303 (1999) (absent clear abuse, "the courts will not second-guess editorial decisions as to what constitutes matters of genuine public concern"); *Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001) ("[I]t is well-settled that allegations of sexual harassment, . . . are matters of public concern."); *Todd v. Lovecruft*, No. 19-CV-01751, 2020 WL 60199, at *13 (N.D. Cal. Jan. 6, 2020) ("[T]he public has an interest in identifying individuals who commit sexual abuse and accusations of abuse are matters of public concern.").

an issue within the public interest."); *Prince v. Intercept*, 634 F. Supp. 3d 114, 138–39 (S.D.N.Y. 2022) (finding amended anti-SLAPP statute's actual malice standard applied to defamation claim involving matter of public interest regardless of whether plaintiff was a limited-purpose public figure); *Coleman*, 523 F. Supp. 3d at 259 (finding actual malice standard of New York anti-SLAPP law applied to plaintiff's claim where plaintiff was not a public figure but allegedly defamatory statements involved an issue of public interest); *Goldman*, 2021 WL 4099462, at *1 (finding that social media posts accusing a university student of sexual assault were "communications concerning an issue of public interest"); *Reeves*, 232 A.D.3d at 14, 19–20 (rejecting argument that anti-SLAPP law did not apply to defamation claim arising from report on contentious divorce dispute because plaintiff and his ex-wife were not public figures where statements still involved matters of public interest); *Sackler v. Am. Broad. Companies, Inc.*, 144 N.Y.S.3d 529, 533 (N.Y. Cty. 2021) ("[N]othing in the text of the amended [anti-SLAPP] statute indicates that the Legislature intended for the statute to only apply to defamation cases involving . . . public figures"). Accordingly, because the Article Statement involves a matter of public interest, the actual malice standard applies.

### 2. The district court correctly found that Plaintiff-Appellant could not establish actual malice.

The district court correctly found that The Satanic Temple could not prove by clear and convincing evidence that Newsweek published the Article Statement

35

with actual malice. The actual malice standard requires a plaintiff to establish "by clear and convincing evidence" that the communication on which the action was based "was made with knowledge of its falsity or with reckless disregard of whether it was false." N.Y. CPLR § 76-a(2). As this court has emphasized, "the actual malice standard imposes on a plaintiff 'a heavy burden of proof, a burden that is designed to assure to the freedoms of speech and press that breathing space essential to their fruitful exercise.'" *Brimelow,* 2021 WL 4901969, at *2 (quoting *Contemp. Mission, Inc. v. N.Y.Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988)). Showing that the defendant was negligent in publishing a statement is not sufficient; a plaintiff must demonstrate that the author "in fact entertained serious doubts as to the truth of his publication or acted with a high degree of awareness of probable falsity." *Masson*, 501 U.S. at 510 (internal mark omitted).

The Satanic Temple's continued reliance on Newsweek's alleged departure from its Editorial Guidelines in publishing the Article Statement as proof of actual malice is misplaced. As the Supreme Court and this Court have taught, even "an extreme departure from professional standards . . . cannot provide a sufficient basis for finding actual malice." *Connaughton*, 491 U.S. at 665; *see also Brimelow v. New York Times Co.*, 2021 WL 4901969 at *3 (2d Cir. Oct. 21, 2021) ("plaintiff must prove *more than* an extreme departure from professional standards . . . [to] provide a sufficient basis for finding actual malice") (emphasis in original).

36

Moreover, The Satanic Temple cites no support for its argument that this well-established principle does not apply when a defendant allegedly departed from its own standards. *See* App. Br. 41; *see also* A1093–94 (admitting at oral argument that The Satanic Temple had not located a case holding that the failure to comply with defendant's own guidelines constituted reckless disregard for the truth).

The Satanic Temple's remaining arguments similarly fail to establish actual malice. Here, the relevant inquiry is whether Newsweek knew the Article Statement was false or recklessly disregarded the truth. *See Stern v. Cosby*, 645 F. Supp. 2d 258, 284–85 (S.D.N.Y. 2009) (dismissing defamation claims against publisher where plaintiff offered evidence that the author, but not the publisher, acted with actual malice). New York law is clear that a publisher is "permitted to rely on an author's reputation and experience" and "has no independent duty to investigate an author's story unless the publisher has actual, subjective doubts as to the accuracy of the story." *Stern*, 645 F. Supp. 2d at 284; *see also Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1032 (2d Cir. 1997) (holding that a newspaper publisher was not liable for an allegedly defamatory statement in one of its articles where it "relie[d] upon the integrity of a reputable author and ha[d] no serious reason to question the accuracy of the information provided by that author."); *Tzougrakis v. Cyveillance, Inc.*, 145 F. Supp. 2d 325, 332 (S.D.N.Y. 2001)

(defendant magazine was entitled to rely on "a trusted reporter's, representations without rechecking her assertions or retracing her sources").[8]

There is no evidence, and The Satanic Temple can point to none, that Newsweek in fact entertained serious doubts as to the accuracy of Duin's reporting or the truth of the Article Statement. The law is clear that a publisher does not have a duty to investigate unless it "already [has] obvious reasons to doubt the accuracy of a story." *Dongguk Univ.*, 734 F.3d at 124; *see also Gertz*, 418 U.S. at 332 ("mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth"); *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) ("[A]ctual malice is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing, but by whether there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.") (quotations omitted); *Kesner*, 590 F. Supp. 3d at 696 ("[T]he operative question is whether a

---

[8] Contrary to the district court's conclusion, neither *Palin v. New York Times Co.* nor *Dongguk Univ. v. Yale Univ.* have overturned Second Circuit precedent holding that a publisher does not act with actual malice where it reasonably relied on the good reputation of its reporter. *See Palin*, 940 F.3d 804, 810 (2d Cir. 2019) (considering state of mind of the author of the editorial only where defendant identified him as the individual responsible for publication); *Dongguk*, 734 F.3d 113, 125 (2d Cir. 2013) ("assuming without deciding" that the individual plaintiff identified was responsible for the publication of the relevant statement).

defendant failed to investigate in the face of 'actual, subjective doubts as to the accuracy of the story.'") (citation omitted).

Despite The Satanic Temple's insistence that Newsweek should have investigated the Article Statement further, The Satanic Temple does not identify any record evidence to which Newsweek had access that would have caused Newsweek to doubt the accuracy of the Article Statement. *See Connaughton*, 491 U.S. at 691–93 (clarifying that defendant's access to evidence that would have undermined the defamatory statements, not defendant's alleged failure to investigate alone, support a finding of actual malice). Rather, Nancy Cooper, who was responsible for editing the Article, A335 at 155:17–19, testified that she had no reason to doubt the accuracy of the Article or the truth of the Article Statement. A332 at 140:21–24; A340 at 183:7–17; A336 at 157:16–23; A349 at 222:6–17; A341 at 184:17–21; A351 at 233:4–7; A354. Moreover, Cooper testified that she trusted Duin's reporting and relied on Duin's experience as a reporter and her representations that she had fact-checked the Article. A332 at 140:21–24; A336 at 157:16–23; A340 at 183:7–17; A349 at 222:6–17; A351 at 233:4–7; A354. Duin has been a journalist for over forty-five years, has received multiple awards for her reporting, has been a journalism professor at multiple universities, has published six books about religion, and has a master's degree in religious studies. A228–29 at 11:13–12:9; A231–32 at 15:5–16:11; A237 at 88:4–19; A262 at 183:10–12.

Newsweek hired Duin because of her established religion reporting experience and relied on Duin's experience in editing her Articles. A330 at 70:6–13; A332 at 140:21–24; A336 at 157:16–23; A340 at 183:7–17; A345 at 203:8–23. Accordingly, The Satanic Temple cannot prove that Newsweek published the Article Statement with actual malice. *See Stern*, 645 F. Supp. 2d at 284–86 (granting defendant publisher's motion for summary judgment where there was "no evidence that anyone at [publisher] had any actual, subjective doubt as to any of [the author's] reporting").[9]

Even if Duin's state of mind could be imputed to Newsweek, The Satanic Temple cannot show that Duin acted with actual malice, either. Duin was told by four separate sources, without Duin having asked any questions about sexual abuse, that they were aware of accounts of sexual abuse being covered up by The Satanic Temple.[10] *See* A263 at 186:19–23 (Duin testifying that she learned "there

---

[9] Although the actual malice standard applies to The Satanic Temple's defamation claim, for the same reasons set forth above Plaintiff-Appellant cannot satisfy New York's "gross irresponsibility" standard. *See Isaly v. Boston Globe Media Partners, LLC*, No. 21-1330-CV, 2022 WL 121283, at *2 (2d Cir., Jan. 13, 2022) (plaintiff could not establish gross irresponsibility where "publisher [was] entitled to rely on the research of an established writer").

[10] Newsweek offers these statements for their effect on Duin's state of mind in writing the Article Statement, not for the truth of the matter asserted. *See* FRE 801(c); *Smith v. City of New York*, No. 14-CV-9069, 2016 WL 5793410, at *4 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 697 F. App'x 88 (2d Cir. 2017) ("A statement is admissible non-hearsay when it is offered as evidence of the effect of a statement

*(Continued)*

40

[were] multiple reports among . . . former members [of The Satanic Temple], of sexual abuse/harassment . . . whether it's from Scott [Malphas] or from the Seattle members or from Jinx [Strange]."); A269 at 16:3–12, A271–72 at 22:11–23:21 (Sullivan testifying that he told Duin that the Queer Satanic members had been removed from the Washington Chapter of The Satanic Temple because they were copied on an ethics complaint that involved the mismanagement of a sexual harassment allegation); A285 (messages sent from Sullivan to Duin regarding his removal from the Washington Chapter); A278–84 (social media posts sent by Sullivan to Duin in which a member claimed she was removed from groups within The Satanic Temple after criticizing inappropriate sexual comments made by leadership); A289–90 at 10:23–11:13 (Johnson testifying that he told Duin he had been a witness to a sexual harassment complaint in The Satanic Temple); A296 (Malaphas email to Duin referencing accounts of sexual assault that were not investigated); A310–12 (Strange email to Duin referencing "[a]ccounts of sexual abuse being covered up in ways there were more than anecdotal."); *see also Church of Scientology Int'l*, 238 F.3d at 174 (corroboration of claims by multiple sources undermined allegations of actual malice). Duin testified that she found the Article Statement to be "inherently plausible" because Strange's statement was

---

on the listener, the knowledge motivating his actions, or his state of mind at the relevant point in time.")

consistent with the other sources. A247–49 at 121:23–123:9. She considered Strange to be a credible source based on other information he had provided. A248-49 at 122:15-123:9. She also found all the sources who mentioned accounts of sexual abuse to be credible, based on her observation that they were "all true believers" when they joined The Satanic Temple, but left "not believing" in the organization based on what they observed. A260–61 at 175:22–176:4.

The Satanic Temple's contention that Duin recklessly disregarded the truth by relying on "disgruntled former members" is without merit because she had no reason to believe they would provide false information. *See BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 826 (S.D.N.Y. 2021), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022) (finding that allegation that defendant's source was biased against plaintiff did not sufficiently demonstrate reckless disregard for the truth where plaintiff could not plausibly allege that defendant was "subjectively aware that the source was unreliable"); *Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85, 92–93 (S.D.N.Y. 1980) (authors' reliance on allegedly biased sources did not amount to reckless disregard for the truth where "there [was] no evidence that these sources, even if biased, would necessarily provide false information"). Similarly, The Satanic Temple's argument that Duin should not have relied on Strange because he utilizes a pseudonym—a common practice among members of The Satanic Temple—is flawed because the Article Statement was also supported

42

by other sources she found reliable. *See Cabello-Rondon v. Dow Jones & Co., Inc.*, 720 F. App'x 87, 89 (2d Cir. 2018) ("[R]eliance on anonymous sources alone does not support an inference that the publisher acted with actual malice.").

Furthermore, Duin's decision not to ask Greaves about the Article Statement does not amount to actual malice where, as here, she did not doubt the accuracy of the statement. *See Brimelow*, 2021 WL 4901969, at *3 ("[I]t is well settled that denials without more do not support a plausible claim of actual malice."); *Kesner*, 590 F. Supp. 3d at 696 ("[T]he operative question is whether a defendant failed to investigate in the face of 'actual, subjective doubts as to the accuracy of the story.'"); *Loeb*, 497 F. Supp. at 93 ("failure to verify statements with the plaintiff . . . do[es] not amount to reckless disregard of the truth") (citing *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968)). Moreover, the Article includes Greaves's statement that he considers complaints about The Satanic Temple "old news" and that, "We get this litany of senseless disparaging claims against us that says we're a religious group acting in a nefarious manner." A60. Duin put Greaves's general denial about claims made against The Satanic Temple after the Article Statement because she believed Greaves's denial applied to the "various accusations" made against The Satanic Temple, including the Article Statement. A254–55 at 128:20–129:7. She also felt that Greaves's responses to questions about "official orgies"

was a "fair rebuttal" to the Article statement as well. A251 at 125:19–21; A253 at 127:5–18.

Finally, Plaintiff-Appellant's claim that Duin and Cooper were biased against The Satanic Temple and included the Article Statement as part of a "pre-determined" narrative also does not support a finding of actual malice. Allegations of an improper bias towards the plaintiff are not sufficient to demonstrate actual malice. *Brimelow*, 2021 WL 4901969 at *3; *see also Buckley v. Littell*, 539 F.2d 882, 889 (2d Cir. 1976) ("Repeatedly the Court has said that ill will toward the plaintiff or bad motive, indeed, hatred, spite or desire to injure, are not the kind of 'malice' that the *New York Times Co. v. Sullivan* test comprehends."). Rather, allegations of bias are relevant to a determination of actual malice "only in conjunction with an allegation that the speaker otherwise had knowledge of the falsity of [her] statements." *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 187 (S.D.N.Y. 2020) (citing *Palin v. New York Times Co.,* 940 F.3d 804, 814 (2d Cir. 2019)). Here, Plaintiff grasps at Duin's prior writings (none of which were about The Satanic Temple), and Cooper's skepticism over a purported Satanic Temple ritual, but even if that evidence pointed to bias—which it does not—The Satanic Temple still cannot identify any evidence that Duin or anyone at

Newsweek entertained doubts as to the truth of the Article Statement.[11]  *See, e.g.*
*Prince*, 2023 WL 4492413, at *8 (plaintiff failed to allege actual malice where
defendant's alleged "one sided" reporting on plaintiff had "no tendency to prove"
the relevant statements were false).

In short, there is no evidence – let alone clear and convincing evidence – that
Newsweek (or Duin) published the Article Statement with knowledge of its alleged
falsity or reckless disregard for falsity, and on that independent basis The Satanic
Temple's claim should be dismissed.

### 3.     The district court correctly applied the actual malice standard.

The Satanic Temple's attempts to undermine the district court's holding by
challenging the court's application of the actual malice standard on summary
judgment are meritless. First, Plaintiff-Appellant's argument that the district court
was incorrect in analyzing whether The Satanic Temple could meet its burden of
establishing by clear and convincing evidence that Newsweek published the
Article Statement with actual malice because First Amendment considerations do

---

[11] The previous Duin articles referenced by Plaintiff-Appellant were not
about The Satanic Temple itself, but media critique pieces about how the *Boston
Globe* reported on the opening of The Satanic Temple's headquarters, and how
different outlets reported on an incident of teen girls in Florida bringing knives to
school. A517–29. Plaintiff-Appellant also misrepresents Duin's article on
satanism.  The language regarding the role of sex within satanism is part of Duin's
summary of the book the article is about, not an assertion of her own beliefs
regarding satanic practices. A513–15

not apply to its defamation claim here is without support and improperly raised for the first time on appeal. App. Br. 30–32; *see also Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 95 (2d Cir. 2000) ("We have repeatedly held that if an argument has not been raised before the district court, we will not consider it.") (internal citation omitted). Regardless, the "clear and convincing" standard derives from the language of the New York anti-SLAPP statute separate and apart from any First Amendment considerations. N.Y. Civ. Rights Law § 76-a(2).

Second, the district court did not improperly weigh evidence. Rather, the district court considered all the evidence The Satanic Temple claimed supported a finding of actual malice, and found no evidence from which a reasonable jury could conclude by clear and convincing evidence that the Article Statement was published with actual malice. A1143 (concluding the record demonstrated "a total lack of any evidence that Duin harbored any serious uncertainties or had any obvious reasons to doubt the truth of the Article Statement").

Finally, contrary to Plaintiff-Appellant's assertions, the district court did consider the evidence Plaintiff-Appellant put forward in support of actual malice in the aggregate. The district court expressly stated that it would "analyze the conduct underlying each of the alleged Editorial Guideline violations to determine if they could amount to evidence sufficient for a reasonable jury to find, by clear and convincing evidence, that Newsweek published the Article Statement with actual

malice" and reviewed each piece of evidence The Satanic Temple put forwarded. A1135–42. The district court then concluded that, "[v]iewing in the aggregate the evidence marshalled by The Satanic Temple there is not sufficient evidence in the record to support a finding that Newsweek made the Article Statement with actual malice." A1142–43.

In short, the district court gave The Satanic Temple every possible benefit in considering whether it would be able to establish by clear and convincing evidence that Newsweek published the Article Statement with actual malice and, for the reasons set forth above, correctly found that The Satanic Temple could not make the required showing. Thus, the district court's order granting Newsweek's Motion for Summary Judgment and dismissing The Satanic Temple's defamation claim should be affirmed.

## II. THE DISTRICT COURT'S ORDER GRANTING DUIN'S MOTION TO DISMISS SHOULD BE AFFIRMED.

A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by state law subject to due process limitations. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). Under New York law, to establish specific personal jurisdiction over a defendant a plaintiff must show that the defendant committed acts within the scope of New York's long-arm

statute, CPLR § 302." [12]  *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014),

*aff'd*, 858 F.3d 55 (2d Cir. 2017) (quoting *Schultz v. Safra Nat. Bank of New York*,

377 Fed. Appx. 101, 102 (2d Cir.2010)). Due process requires that a defendant

have certain "minimum contacts" with the forum state and "that the maintenance

of the suit does not offend "traditional notions of fair play and substantial justice."

*Chaiken,* 119 F.3d at 1027 (internal quotations omitted); *see also Daimler AG v.*

*Bauman*, 571 U.S. 117, 126 (2014) ("[A] State may authorize its courts to exercise

personal jurisdiction over an out-of-state defendant if the defendant has certain

minimum contacts with the State such that the maintenance of the suit does not

offend traditional notions of fair play and substantial justice.") (internal quotations

omitted). Here, the district court correctly dismissed the claims against Duin

because it lacked personal jurisdiction over her.

---

[12] The Satanic Temple did not—and still does not—contend that Duin would be subject to general personal jurisdiction in New York. A153; App. Br. 85–91. Nor can it, because Duin resides in Washington, not New York. SA1 at ¶ 2; *see also Daimler AG*, 571 U.S. at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."); *Reich*, 38 F. Supp. 3d at 455 ("[T]he Supreme Court made clear in Daimler that, as a rule, it is not constitutionally permissible to sue an individual . . . in a state where that individual is not 'at home' and that an individual is 'at home' in the state of his domicile.") (internal quotations omitted).

### A.    <u>Plaintiff-Appellant Cannot Establish Specific Jurisdiction Because Duin Has Not Purposefully Availed Herself of the Forum.</u>

The Satanic Temple cannot establish specific jurisdiction over Duin because she does not have the requisite minimum contacts with New York. To establish specific jurisdiction over an out-of-state defendant in a defamation case, a plaintiff must satisfy CPLR § 302(a)(1). *See Best Van Lines*, 490 F.3d at 245–46. Under CPLR 302(a)(1), a plaintiff must establish that the defendant transacts business in New York, and that the cause of action arises from that transaction of business. *Id.* at 246. For an individual to "transact business" within the meaning of CPLR 302(a)(1), "there must have been some 'purposeful activities' within the State that would justify bringing the nondomiciliary defendant before the New York courts." *SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 404 (2012) (citation omitted); *see also Best Van Lines*, 490 F.3d at 246 (same). As The Satanic Temple admits, in defamation cases "transacting business" is construed narrowly and does not include "mere defamatory utterances sent into the state." *Id.* at 248; *see also Giannetta v. Johnson*, No. 20-CV-9016, 2021 WL 2593305, at *7 (defamation claims are subject to a higher jurisdictional bar in New York "[i]n light of the First Amendment interests implicated by [such] claims").

Here, The Satanic Temple has not established jurisdiction over Duin under the first prong of CPLR 302(a)(1). Duin's act of writing an article that was

published by Newsweek on a website accessible in New York is not a transaction of business in New York. *See SPCA*, 18 N.Y.3d at 405 (holding that publishing articles "on a medium that was accessible in this state . . . [that was] equally accessible in any other jurisdiction" does not satisfy the transacting business requirement for jurisdiction in defamation cases); *Best Van Lines*, 490 F.3d at 253 (making defamatory statements outside of New York "does not, without more, provide a basis for jurisdiction, even when those statements are published in media accessible to New York readers."); *Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198, 203 (E.D.N.Y. 2014) (rejecting plaintiff's argument that "defendant transacted [business] in New York when he 'projected his statements into New York and targeted New Yorkers'" through an online news article); *Realuyo v. Villa Abrille*, No. 01-CV-10158, 2003 WL 21537754, at *67(S.D.N.Y. July 8, 2003) (writing and posting allegedly defamatory material on a website accessible to readers in New York is insufficient to show that a defendant has transacted business within New York).

Instead, The Satanic Temple must show "something more" than the mere publishing of the Article on the Website to satisfy the "transacting business" requirement, which it cannot do. *See Best Van Lines*, 490 F.3d at 249 (where defendants' out-of-state conduct involved defamatory statements projected into New York, courts have required "something more" to exercise specific

50

jurisdiction). Duin is a Washington journalist who wrote for a nationally-available online news publication that happens to have offices in New York. A12 at ¶ 7; SA1 at ¶¶ 2–3. Duin is not a Newsweek employee, does not travel to or otherwise conduct activity in New York in relation to her work with Newsweek, and does not pay New York taxes on any income derived from Newsweek. SA1-2 at ¶¶ 4, 9. Accordingly, Duin does not "transact business" in New York under CPLR 302(a)(1). *See SPCA*, 18 N.Y.3d at 405 (holding that limited phone calls and short visits to New York, donations to a New York organization, and comments about New York organization on a website did not amount to transacting business under CPLR 302(a)(1)); *Kurzon LLP v. Thomas M. Cooley L. Sch.*, No. 12-CV-8352, 2014 WL 2862609, at *5 (S.D.N.Y. June 24, 2014) (holding that annual or semi-annual alumni receptions, law school student recruitment forums, and some student externship placements did not amount to transacting business in New York); *c.f. Hansen Realty Dev. Corp. v. Sapphire Realty Grp., LLC*, 104 N.Y.S.3d 59, 60 (1st Dep't 2019) (finding defendant "subject to [the] court's jurisdiction pursuant to [the] long arm statute [N.Y. C.P.L.R. 302(a)(1)]" as the defendant's "attendance at and participation in multiple business meetings in New York . . . is sufficient to establish that he was transacting business in New York").

The Satanic Temple's conclusory assertion that Duin is an employee of Newsweek fails to satisfy the transacting business prong of CPLR § 302(a)(1).

App. Br. at 87–90. First, The Satanic Temple's contention that Duin is a Newsweek employee is directly contradicted by Duin's sworn declaration and should be disregarded. *See* SA1 at ¶¶ 3, 4; *see also Brownstone Inv. Grp. LLC v. Bonner & Partners, LLC*, 2021 WL 3423253, at *2 (S.D.N.Y. Aug. 5, 2021) (plaintiff's allegations in support of a prima facie showing of jurisdiction are only "taken as true to the extent they are uncontroverted by the defendant's affidavits") (citation omitted). And The Satanic Temple's claim that Duin and Cooper "worked together to produce this [A]rticle as co-agents for Newsweek" does not undermine the fact that Duin was a freelance reporter, not an employee.

Second, even if Duin – a resident of Washington – were employed by Newsweek, the residence of an employer is not sufficient to establish personal jurisdiction over an employee, and The Satanic Temple has not identified any caselaw holding otherwise. *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781, 104 S. Ct. 1473, 1482, 79 L. Ed. 2d 790 (1984) ("jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs [her] . . . Each defendant's contacts with the forum State must be assessed individually."); *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 747 F. Supp. 922, 929 (S.D.N.Y. 1990) (recognizing that jurisdiction over an employee under § 302(a)(1) may not be premised merely on jurisdiction over the corporation). Contrary to The Satanic Temple's representation, in *Sovik v. Healing*

*Network*, 244 A.D.2d 985, 987 (4th Dep't 1997), the court did not find that defendants transacted business in New York pursuant to CPLR § 302(a)(1). *See* App. Br. at 89–90. Moreover, in *Sovik*, defendants drafted and personally controlled the distribution of a letter in New York that accused a New York resident of sexual misconduct. 244 A.D.2d at 987. The Satanic Temple has not, and cannot, allege such significant New York contacts here.

Even if Duin's attenuated connection to New York could amount to "transacting business" in the state, which it does not, there must be "a 'substantial relationship' between [her] purposeful activities [in New York] and the transaction out of which the cause of action arose" for specific jurisdiction to lie. *SPCA*, 18 N.Y.3d at 404; *see also Reich*, 38 F. Supp. 3d at 458 (for specific jurisdiction, "'an articulable nexus' or a 'substantial relationship' between the asserted claim and the transacted business is required"). The Satanic Temple cannot plausibly allege a substantial relationship between Duin's activities and its defamation claim here. The Article reports on litigation in Washington between Washington residents and The Satanic Temple, a Massachusetts corporation. A12 at ¶ 6; A44–63. It does not mention New York or refer to any activity by The Satanic Temple in New York. A44–63. Duin did not conduct any research or other activity in New York in preparing the Article, did not interview any New York residents or travel to New York for the Article, and played no role in determining when or where the Article

would be published. SA2 at ¶¶ 6–8. Thus, there is no substantial relationship between Duin's activities and the alleged defamatory statements such that specific jurisdiction would be statutorily permissible. *See SPCA*, 18 N.Y.3d at 405 (finding no substantial relationship between allegedly defamatory statements and defendants' New York activities where defendant "did not visit New York in order to conduct research, gather information or otherwise generate material"); *Tannerite Sports, LLC v. NBCUniversal Media LLC,* 135 F. Supp. 3d 219, 234 (S.D.N.Y. 2015), *aff'd sub nom.* 864 F.3d 236 (2d Cir. 2017) (plaintiff failed to make a threshold showing of jurisdiction under CPLR 302(a)(1) where defendant did not conduct research in New York or interview any sources in New York for allegedly defamatory report and did not target New York viewers); *Trachtenberg*, 43 F. Supp. 3d at 205 ("[P]laintiff does not allege a connection between the content of the [article] and the fact that [the ad agency that runs ads on the same website has] offices [that] happen to be located in New York. This sort of 'merely coincidental' nexus does not suffice to confer jurisdiction.").

The Satanic Temple's contention that "Newsweek had published 22 articles authored by Duin," App. Br. at 87, which have no connection to the defamation claim in this case, has no bearing on the jurisdictional analysis here. Nor do Plaintiff-Appellant's allegations that Duin worked with Cooper and had a New York-based supervisor. *Id.* at 88. Instead, as the case cited by The Satanic Temple

makes clear, a substantial relationship exists only where a defendant's activities in the forum state specifically relate to the gathering and publication of the allegedly defamatory statements. *See Goldfarb v. Channel One Russia*, 442 F. Supp. 3d 649, 663 (S.D.N.Y. 2020), *recons. den.*, No. 18-CV-8128, 2021 WL 1392850 (S.D.N.Y. Apr. 13, 2021) (finding a substantial relationship between the defamation claim and defendant's conduct where defendant obtained knowledge of the falsity of the statements in New York by interviewing plaintiff there).

Here, Plaintiff-Appellant merely asserts that its claim "arose from" Duin's relationship with Newsweek, App. Br. at 90, but does not contend that Duin conducted any research in New York, interviewed any sources in New York, or otherwise engaged in any newsgathering for the Article in New York, which she did not. *See* SA2 at ¶¶ 5–7. Thus, Plaintiff-Appellant has failed to demonstrate that there is a substantial relationship between Duin's activities in New York and the research, writing, and publishing of the Article so as to support the exercise of personal jurisdiction over Duin in New York.

## B. The Exercise of Jurisdiction Over Duin Would Violate Due Process.

Even if Duin's contacts with New York satisfied CPLR 302(a)(1), which they do not, the exercise of jurisdiction over Duin would violate due process. Due process requires that the exercise of jurisdiction "not offend 'traditional notions of fair play and substantial justice.'" *Best Van Lines*, 490 F.3d at 242 (quoting *Int'l*

*Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945)). Whether the exercise of

jurisdiction is 'reasonable' depends on:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Chaiken,* 119 F.3d at 1028 (internal quotations omitted).

Here, subjecting Duin to jurisdiction in New York would be unreasonable

because it would impose a significant burden on Duin, a Washington resident who

has not traveled to New York for fourteen years, owns no property or assets in the

State, wrote the Article in Washington about a dispute between Washington

residents and a Massachusetts corporation, and did not interview any sources in

New York or travel to New York for the Article. SA1-2 at ¶¶ 2, 5–7, 9, 10; A44–

63. Thus, compelling Duin to litigate in this forum would offend traditional notions

of fair play and substantial justice. *See Chaiken*, 119 F.3d at 1029–30 (exercise of

jurisdiction over Israeli newspaper where newspaper had no meaningful presence

in the forum and the parties, witnesses, and evidence were located in Israel would

violate due process); *Copp v. Ramirez*, 62 A.D.3d 23, 31 (1st Dep't 2009) ("Even

if defendants had 'minimum contacts' with New York State, subjecting them to

jurisdiction here would be unreasonable since they are all residents of New

Mexico, they made the allegedly defamatory statements in New Mexico three

years after their brief contacts with New York, and plaintiffs are not residents of New York.").

## **CONCLUSION**

For the reasons set forth above, the district court's order granting Newsweek's Motion for Summary Judgment and the order granting Duin's Motion to Dismiss should be affirmed.

Dated: October 22, 2025

Respectfully Submitted,

/s/*Cameron Stracher*
Cameron Stracher
Sara C. Tesoriero
CAMERON STRACHER, PLLC
1133 Broadway, Suite 516
New York, NY 10010
Tel: 646.992.3850
Fax: 646.992.4241
cam@stracherlaw.com
sara@stracherlaw.com

*Attorneys for Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(I), and the word limit of Fed. R. App. P. 32(a)(7)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this documents contains 13,408 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times Roman font.

Respectfully Submitted,

<u>/s/*Cameron Stracher*</u>
Cameron Stracher
Sara C. Tesoriero
CAMERON STRACHER, PLLC
1133 Broadway, Suite 516
New York, NY 10010
Tel: 646.992.3850
Fax: 646.992.4241
cam@stracherlaw.com
sara@stracherlaw.com

*Attorneys for Appellee*