25-868
*The Satanic Temple, Inc. v. Newsweek Digital LLC*

# United States Court of Appeals
# For the Second Circuit

August Term 2025
Argued: February 11, 2026
Decided: May 28, 2026

No. 25-868

THE SATANIC TEMPLE, INC.,

*Plaintiff-Appellant,*

*v.*

NEWSWEEK DIGITAL LLC,

*Defendant-Appellee,*

JULIA DUIN,

*Defendant.*[*]

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above. We grant The Satanic Temple's motion to amend the case caption to correct the name of the Defendant-Appellee from "Newsweek Magazine LLC" to "Newsweek Digital LLC." Insofar as The Satanic Temple also

1

Appeal from the United States District Court
for the Southern District of New York
No. 22-cv-1343, Vyskocil, *Judge*.

Before:        CABRANES, NATHAN, and MERRIAM, *Circuit Judge*s.

In 2021, Newsweek published an article entitled "Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit." Written by religion reporter Julia Duin, the piece recounts several internal conflicts within The Satanic Temple. The Satanic Temple responded by suing Newsweek and Duin for defamation. This appeal involves only one statement within that article: A quote from a former Satanic Temple member describing "[a]ccounts of sexual abuse being covered up in ways that were more than anecdotal" within the organization. The Satanic Temple claims that Newsweek acted with actual malice by publishing the quote, and further contends that Duin, a Washington-based journalist, should be subject to personal jurisdiction in New York. We disagree on both scores. Instead, we hold that Duin is not subject to personal jurisdiction under Section 302(a)(1) of New York's long-arm statute, that New York's anti-SLAPP statute applies to The Satanic Temple's defamation claim, and that The Satanic Temple failed to establish an issue of triable fact as to Newsweek's actual malice. **AFFIRMED**.

> MATTHEW A. KEZHAYA, Kezhaya Law PLC, Minneapolis, MN, *for Plaintiff-Appellant*.

moves to add Duin as a defendant, we deny the motion because Duin is already listed as a defendant.

CAMERON STRACHER, Sara Tesoriero, Cameron Stracher, PLLC, New York, NY, *for Defendant-Appellee*.

————

NATHAN, *Circuit Judge*:

In October 2021, Newsweek Digital LLC (Newsweek) published an article entitled "Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit." The article, written by Washington-based journalist Julia Duin, details several internal disputes between members of The Satanic Temple (the Temple) and its leadership. The Satanic Temple responded by suing Newsweek for libel, claiming that many statements in the article were false and defamatory. By the time the case reached summary judgment, only one statement remained at issue: A quote from a former Satanic Temple member describing "[a]ccounts of sexual abuse being covered up in ways that were more than anecdotal" (the cover-up quote) within the organization. App'x at 464.

On summary judgment, the district court concluded that no rational juror could find Newsweek either knew or entertained serious doubts that this quote was false prior to publication, and therefore it granted summary judgment in favor of the magazine. The Satanic Temple now appeals from that judgment, as well as from an earlier order dismissing reporter Duin for lack of personal jurisdiction.

For the reasons explained below, and in recognition of New York's choice to offer greater protection to defamation defendants than the First Amendment requires, we affirm both judgments.

3

### I.      Factual Background

Newsweek publishes a national news magazine covering politics, business, and current events out of New York.[1]  Julia Duin is a long-time religion reporter and professor of journalism who lives and works in Washington state.  The Satanic Temple is a nationwide, nontheistic religious organization headquartered in Massachusetts with over 500,000 members.

Duin began researching the relevant article in September 2021, when she received a tip from a fellow journalist about discontent brewing among The Satanic Temple's membership.  The journalist told Duin that he had heard members complain of, *inter alia*, The Satanic Temple's "use of . . . defamation lawsuits" to "harass internal critics" and "leadership sexually exploiting members or failing to respond to . . . sex assault allegations against chapter heads."  App'x at 275.

Duin followed that tip and began to prepare the story.  She started by researching a 2020 lawsuit in which The Satanic Temple had sued four of its members for defamation in the Western District of Washington.  Duin interviewed two of the former Satanic Temple members involved in that lawsuit, who told her that they "were kicked out [of the organization] for being witnesses to an ethics complaint" that alleged "mismanagement of [a] sexual harassment complaint" in the Temple's Washington Chapter.  App'x at 286.

Duin went on to interview ex-members Jinx Strange and Scott

---

[1] Newsweek Digital LLC is a New York LLC whose sole member is incorporated and headquartered in New York.

Malphas.[2] Malphas, the former head of the Temple's Arizona Chapter, told Duin that he had witnessed "an account of sexual assault, and the response was 'we are looking into it,' then never followup [*sic*]." App'x at 295. Strange, a Wisconsin-based former member, told Duin that he believed The Satanic Temple "cover[ed] up and protect[ed] men accused of sexual misconduct," and that after he left the organization, he had heard "[a]ccounts of sexual abuse being covered up in ways that were more than anecdotal." App'x at 560–61. In the course of her research, Duin also examined messages between a former member and a Temple leader about the mishandling of an internal complaint related to alleged inappropriate sexual comments from another member.

Finally, Duin interviewed Lucien Greaves, co-founder of The Satanic Temple; Matt Kezhaya, the Temple's general counsel; and, on Greaves' suggestion, Dr. Joseph Laycock, the author of a book about the Temple's history. Greaves generally denied the truth of the members' complaints, though Duin did not specifically ask him about Strange's cover-up quote.

Relying on the above research, Duin drafted the article at issue. That draft was edited by Nancy Cooper, Newsweek's then-Editor in Chief. Though Cooper offered broad suggestions to the piece, she did not fact check it herself. Instead, she relied on Duin, who assured Cooper that she had "factchecked until [she was] buggy-eyed." App'x at 354.

The resulting article, published October 29, 2021, centers on The Satanic Temple's defamation lawsuit against its four ex-members in

---

[2] Both Strange and Malphas are pseudonyms.

Washington state. It also details complaints about the Temple's leadership from former members outside of the Washington Chapter. This appeal centers on Strange's cover-up quote, which appears in that latter segment of the article:

> [Strange] soon left the group, then was leaked material about "leaders posing happily with major alt-right media figures," he wrote. *"Accounts of sexual abuse being covered up in ways that were more than anecdotal.* Dozens of people kicked out for asking for financial records from this alleged-non-profit organization."

App'x at 464 (emphasis added).

### II. Procedural Background

The Satanic Temple immediately took issue with Newsweek's piece. One day after publication, it sent the magazine a retraction demand, claiming that more than twenty statements in the article were false and defamatory. Newsweek did not retract the story. The Satanic Temple then brought an action in the district court, alleging that twenty-two separate statements in the article were defamatory in violation of New York law and seeking injunctive and monetary relief.

Duin moved to dismiss the claims against her for lack of personal jurisdiction, and Newsweek moved to dismiss the action for failure to state a claim. The district court granted Duin's motion to dismiss, reasoning that she could not be haled into court in New York after researching and drafting the article entirely in Washington. *See Satanic Temple, Inc. v. Newsweek Mag. LLC*, 661 F. Supp. 3d 159, 165–68 (S.D.N.Y. 2023). The district court also partially granted Newsweek's

motion to dismiss as to every article statement except for Strange's cover-up quote. *See id.* at 171–72. Then, in 2025, both parties moved for summary judgment. The district court granted Newsweek's motion. It concluded that New York's anti-SLAPP statute mandated applying a higher standard of fault to The Satanic Temple's claim and, employing that standard, it found that the Temple had not established a triable issue of fact as to Newsweek's fault. *See Satanic Temple, Inc. v. Newsweek Mag. LLC*, 774 F. Supp. 3d 688, 698–707 (S.D.N.Y. 2025). This appeal followed.

### III.  Discussion

The Satanic Temple challenges both the district court's grant of summary judgment and its earlier decision to dismiss Duin for lack of personal jurisdiction. We review both judgments de novo. *See Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). After "construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor," summary judgment is appropriate "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023) (quotation marks omitted).

Under New York law, "a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). The Satanic

7

Temple takes issue with the district court's treatment of the third element: fault. First, it contends that New York's anti-SLAPP statute—and its higher standard of fault—does not apply to its claim. Second, even if the higher standard does apply, the Temple argues that it raised a genuine issue of material fact as to Newsweek's fault. Finally, with respect to Duin's participation in the case, it claims that the district court should have exercised personal jurisdiction over Duin because she was a Newsweek employee, and Newsweek is a New York-based company. We consider that last argument first.

### A. Personal Jurisdiction

To determine whether the district court properly declined to exercise jurisdiction over Duin, we begin with New York law. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). Duin, a resident of Washington, is not subject to general jurisdiction in New York; thus, to exercise personal jurisdiction over Duin, she must be within the reach of New York State's long-arm statute, N.Y. C.P.L.R. § 302.

New York's long-arm statute expressly exempts defamation claims from most of its provisions, leaving only one by which the district court could exercise jurisdiction over Duin: Section 302(a)(1). That provision authorizes the exercise of jurisdiction over anyone who "transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" N.Y. C.P.L.R. § 302(a)(1). New York courts applying Section 302(a)(1) ask two questions: (1) whether the defendant carried out "some purposeful activities within the State that would justify bringing the nondomiciliary defendant before the

New York courts," and (2) whether there is "a substantial relationship between the purposeful activities and the transaction out of which the cause of action arose." *SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 404 (2012) (cleaned up).

In most contexts, Section 302(a)(1) is a capacious provision that does not require causation, *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012), and may confer jurisdiction based on only a "single" purposeful act in New York, *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (quotation marks omitted). But not in the defamation context. Instead, "New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation," mindful of the state legislature's "intention to treat the tort of defamation differently from other causes of action." *SPCA of Upstate N.Y.*, 18 N.Y.3d at 405 (quoting *Best Van Lines*, 490 F.3d at 248). In defamation cases, then, not just any purposeful activity in New York will do—for instance, defamatory statements that were "not written in or directed to New York" are not enough, even if "they were posted on a medium that was accessible in this state[.]" *Id.* at 405. Accordingly, The Satanic Temple had to allege more than Duin's mere authorship of an article that could be accessed in New York.

The Temple primarily argues that Duin, as an employee of a New York-headquartered media company whose article was presumably revised by an editor in New York, must have the requisite contacts with the state. Even assuming that the above allegations are

true, we conclude that they are not enough.[3] In *SPCA of Upstate New York*, the New York Court of Appeals considered a defamation claim against an out-of-state defendant who visited a New York SPCA branch several times—and even cut the organization a personal check during one of those visits—before later criticizing its facilities in a series of online posts. *Id.* at 402–03. The Court of Appeals held that personal jurisdiction under Section 302(a)(1) did not lie, despite the defendant's numerous in-state visits. *Id.* at 405. It reasoned that the defendant's posted statements "were not written in or directed to New York," that they were posted on a forum "equally accessible in any other jurisdiction," and, importantly, that the defendant herself "did not visit New York in order to conduct research, gather information or otherwise generate material to publish on the . . . Web site." *Id.* at 405. So too here. Duin's article was neither written in nor directed to New York, it was posted on a public forum accessible in all jurisdictions, and Duin herself did not conduct research for the article in New York, interview a single New York source, or travel to New York at any point in connection with her drafting process. In fact, unlike the out-of-state

---

[3] Before the district court, Duin averred that she was an independent contractor with Newsweek, not an employee. And there is no information in the record establishing Nancy Cooper's location when she edited Duin's article. But because the district court here made its decision as to personal jurisdiction "on the basis of affidavits and other written materials"—and not after an evidentiary hearing—we must resolve all factual disputes "in the plaintiff's favor . . . notwithstanding the contrary presentation by the moving party." *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993) (quotation marks omitted).

defendant in *SPCA of Upstate New York*, Duin did not travel to New York at all during this period, for work or otherwise.

We are not convinced that the outcome would be different if Duin were in fact an employee of Newsweek. In *Montgomery v. Minarcin*, 263 A.D.2d 665 (3rd Dep't 1999), New York's Third Appellate Department considered a defamation claim against an out-of-state journalist who, at the time of the allegedly defamatory statement, was employed by a New York-based television station.[4] *Id.* at 665–66. The Third Department concluded that the defendant could be haled into court under Section 302(a)(1), but it relied far less on the fact of defendant's in-state employment than it did on the nature of the work he had done in New York. Indeed, the fact of his New York employment occupies less than a sentence of the court's reasoning. *Id.* at 668. Instead, the Third Department focused its analysis on the reporter's "extensive[]" journalistic activities in the state: His broadcasts "were researched, written, produced and reported by [the journalist] in this State," which included "interviews with residents and elected officials in [New York]" over "a six-week period in this State." *Id.* at 667–68. Later, when the New York Court of Appeals cited *Minarcin* as an example of a defamation case in which personal jurisdiction lies, it did not mention the fact of the reporter's in-state employment at all. *See SPCA of Upstate N.Y.*, 18 N.Y.3d at 404 (noting

---

[4] "We are bound . . . to apply [New York] law as interpreted by New York's intermediate appellate courts . . . unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on [an] issue, would reach a different conclusion." *Pahuta v. Massey-Ferguson, Inc.,* 170 F.3d 125, 134 (2d Cir. 1999).

that personal jurisdiction was appropriate in *Minarcin* because the news report "was researched (over a six-week period), written, produced and broadcast in New York").

We think this analysis suggests that New York courts applying Section 302(a)(1) look beyond the mere fact of a journalist's in-state employment to the nature of the journalistic activities completed in New York.[5] *Cf. Legros v. Irving*, 38 A.D.2d 53, 56 (1st Dep't 1971) (exercising jurisdiction over out-of-state author when his book was "researched in this State," his contract with the publisher was both "negotiat[ed]" and "executed in New York," and "the book was printed in New York"). Because it is undisputed that Duin did not complete any journalistic activities in New York in connection with this article, we conclude that personal jurisdiction does not lie.

Finally, because we hold that Duin's alleged in-state employment with Newsweek is not enough to justify the exercise of personal jurisdiction under Section 302(a)(1), we also conclude that

---

[5] This makes sense, particularly given "the Legislature['s] . . . intention to treat the tort of defamation differently from other causes of action" in its long-arm statute. *SPCA of Upstate N.Y.*, 18 N.Y.3d at 405. If an out-of-state reporter's contacts with her New York employer were sufficient to justify the exercise of personal jurisdiction under Section 302(a)(1), New York courts would have jurisdiction in many defamation actions against out-of-state reporters, given how many major media companies are headquartered in New York. *See* Roy S. Gutterman, *New York: The Media and Media Law Capital*, 75 SYRACUSE L. REV. 765, 765–69 (2025) (detailing the history of New York as "the media capital of the world," and noting that "The Associate Press, the world's largest news service, has its global headquarters in New York City and countless magazines and their parent companies are based in New York").

Duin's exchange of emails with Cooper, her New York-based editor, is not enough. That Cooper was based in New York while corresponding with Duin is, again, merely a function of Newsweek's location, which is entirely incidental to Cooper's employment with the company. *See Best Van Lines*, 490 F.3d at 249 ("A connection that is merely coincidental is insufficient to support jurisdiction." (quotation marks omitted)). The important question for New York courts is what the *defendant* did to research or create her article in New York. Here, the answer on the record is nothing. On that score, we find the analysis in *Prince v. Intercept*, 634 F. Supp. 3d 114 (S.D.N.Y. 2022), to be both relevant and persuasive. There, the out-of-state journalist was employed by a New York media company and had submitted parts of his allegedly defamatory article to a New York-based colleague. *See id.* at 130 n.16. But the district court, drawing on the above cases, reasoned that the mere facts of his in-state employment and incidental communications with an in-state colleague were not enough to subject him to personal jurisdiction under Section 302(a)(1), because he did not otherwise conduct journalistic activities in New York, such as "travel[ling] to New York to conduct research, interview[ing] a source in New York, or rely[ing] on a New York source" in connection with the relevant article. *Id.* at 130. So too here.

Accordingly, we conclude that the district court correctly declined to exercise jurisdiction over Duin. Because we affirm the district court on statutory grounds, we need not consider whether asserting jurisdiction over Duin would be permissible under the Due Process Clause of the Fourteenth Amendment. *See Best Van Lines*, 490 F.3d at 242.

### B. Summary Judgment

We turn now to the substance of this appeal: The Satanic Temple's defamation claim regarding the cover-up quote. On the parties' motions for summary judgment, the district court first determined that New York's anti-SLAPP statute—and its higher standard of fault—applied to The Satanic Temple's claim. Then, employing that standard, it concluded that no reasonable juror could find that Newsweek had acted with the requisite level of fault. The Satanic Temple challenges both conclusions. Neither challenge persuades us. We agree with the district court that New York's recently amended anti-SLAPP statute applies here, and that The Satanic Temple did not raise a genuine issue of triable fact as to Newsweek's fault. [6]

### 1.    New York's Anti-SLAPP Statute

We first consider whether New York's anti-SLAPP statute applies to The Satanic Temple's defamation claim by its terms. "SLAPP suits—strategic lawsuits against public participation—[] are characterized as having little legal merit but are filed nonetheless to burden opponents with legal defense costs . . . and to discourage those who might wish to speak out in the future." *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 137 n.1 (1992). New York first enacted its anti-SLAPP statute in 1992 in order to protect citizens facing these

---

[6] Newsweek urges us to affirm the district court's grant of summary judgment on falsity grounds: i.e., that the cover-up quote is substantially true. Because we affirm the district court on actual malice grounds, we need not reach this argument.

14

intimidatory actions by, among other things, requiring a heightened showing of fault in defamation claims involving public petition and participation.  The statute reads:

> In an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue.

N.Y. Civ. Rights Law § 76-a(2).  Upon enactment in 1992, the statute covered only a narrow subset of claims brought by those who had applied for a permit or other similar entitlement from a government body.  *See Gottwald v. Sebert*, 40 N.Y.3d 240, 256 (2023).  Unhappy with the statute's circumscribed reach, the New York state legislature in 2020 amended the definition of "an action involving public petition and participation" to "'extend the protection' of the 1992 statute to a broader class of individuals."  *VIP Pet Grooming Studio, Inc. v. Sproule*, 224 A.D.3d 78, 83–84 (2nd Dep't 2024) (quoting Assembly Mem. in Support, Bill Jacket, L. 2020, ch. 250 at 5).  Now, the state's anti-SLAPP protections apply to, as relevant here, "any communication in a place open to the public or a public forum in connection with an issue of public interest[.]"   N.Y. Civ. Rights Law § 76-a(1)(a)(1).   "'Public interest' shall be construed broadly, and shall mean any subject other than a purely private matter."  *Id*. § 76-a(1)(d).

15

Our task is to determine whether Newsweek's article statement is a "communication in . . . a public forum in connection with an issue of public interest." *Id.* § 76-a(1)(a)(1). We conclude that it is.

As an initial matter, we hold that Section 76-a of New York's anti-SLAPP statute applies when a court exercises diversity jurisdiction. "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). We have said that "procedural law is the judicial process for enforcing rights and duties recognized by substantive law, while substantive law is the law that governs the rights and obligations of individuals within a given jurisdiction." *Corley v. United States*, 11 F.4th 79, 85 (2d Cir. 2021) (quotation marks omitted). In this case, we easily conclude that Section 76-a of New York's anti-SLAPP statute is substantive law: It "governs the rights and obligations" of parties to certain defamation suits by defining the standard of fault required to succeed on such claims. *Id.* (quotation marks omitted); *see also Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (holding that state anti-SLAPP provisions providing for "immunity from civil liability" and "mandatory fee shifting" are substantive and apply in diversity). We therefore agree with the district court that Section 76-a—and its heightened fault standard—applies when a federal court sits in diversity.[7]

The question remains whether that heightened fault standard applies in this case. We find that it does. New York's "substantially expanded" definition of "an action involving public petition and

---

[7] We express no opinion about whether other provisions of New York's anti-SLAPP law also apply in diversity.

16

participation" clearly encompasses The Satanic Temple's defamation claim here. *VIP Pet Grooming Studio*, 224 A.D.3d at 83–84. First, the allegedly defamatory statement was printed on Newsweek's website, which is indisputably a "public forum." N.Y. Civ. Rights Law § 76-a(1)(a)(1); *see also Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10, 19 (1st Dep't 2024) ("[A] news media website . . . is a quintessential public forum."). Second, we find that the article statement addresses "an issue of public interest[.]" *Id.* § 76-a(1)(a)(1). Read in its allegedly defamatory manner, the statement suggests that The Satanic Temple—a nationwide organization with over 500,000 members—habitually concealed or failed to address internal complaints of sexual abuse. *Cf. Reeves*, 232 A.D.3d at 19–20 ("allegations of domestic violence . . . and allegations of criminal conduct" are issues of public interest within the meaning of the statute). New York courts have concluded that the amended anti-SLAPP statute applies in similar cases, *see id.*, as well as in cases where the public interest is far less clear, *see Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 32 (1st Dep't 2022) (concluding that plaintiff's online reviews of plastic surgeon addressed an issue of public interest because they "provide[d] information to potential patients"). We are mindful, too, that we must construe "[p]ublic interest . . . broadly," to include "any subject other than a purely private matter." N.Y. Civ. Rights Law § 76-a(1)(d). In light of the above, we conclude that The Satanic Temple's defamation claim clearly involves a "communication in . . . a public forum in connection with an issue of public interest[.]" *Id.* § 76-a(1)(a)(1).

The Temple's arguments to the contrary are unavailing. First, it relies on cases that do not apply the state's anti-SLAPP statute, and at

17

least one of which cuts against its argument. For example, in *Huggins v. Moore*, the New York Court of Appeals *reversed* the lower court for failing to recognize the "matter[s] of genuine social concern" presented in an article about spousal abuse. 94 N.Y.2d 296, 305 (1999). And the First Appellate Department's decision in *Krauss v. Globe Int'l, Inc* is inapposite: There, the court concluded that a private figure's cheating scandal—absent any allegations of sexual abuse—was "mere gossip" and not a matter of public interest. 251 A.D.2d 191, 193 (1st Dep't 1998). Neither case casts the district court's decision here into doubt. Second, to the extent The Satanic Temple argues that the anti-SLAPP statute cannot apply when the plaintiff is not a public figure, that argument is belied by the plain text of the statute, which does not contain a "public figure" requirement.[8] Finally, the Temple's appeal to general First Amendment principles is unhelpful. The Satanic Temple claims that we must "delineate those charges which deserve First Amendment protection from those that don't"—and the instant statement, it claims, is one that does not deserve such protection. Appellant's Br. 77. But that is not our job. "[T]he States may define for themselves the appropriate standard of liability for a publisher . . . of defamatory

---

[8] The district court was not presented with the question of The Satanic Temple's status as a public figure on summary judgment and thus did not resolve it. On appeal, neither party has briefed the issue. Accordingly, we express no opinion about whether The Satanic Temple is a public figure for First Amendment purposes. *See DiBella v. Hopkins,* 403 F.3d 102, 110 (2d Cir. 2005) ("For public figures the third prong of the test for libel requires a showing of 'actual malice'—that is, with knowledge that [the statement] was false or with reckless disregard of whether it was false or not.'" (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964))).

18

falsehood injurious to a private individual," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974), and they "are free to offer greater protection to individual rights than federal law affords" if they so choose, *DiBella*, 403 F.3d at 111. New York has made its choice: In cases concerning statements made in "a public forum in connection with an issue of public interest," New York has chosen to impose a higher standard of fault than the Constitution otherwise requires. N.Y. Civ. Rights Law § 76-a(1)(a)(1); *see also Gertz*, 418 U.S. at 347. It is not our job to second-guess that choice; it is our job to apply it.

Accordingly, we conclude that (1) Section 76-a of New York's anti-SLAPP statute applies in diversity, and (2) applying that statute, The Satanic Temple's defamation claim arises out of a "communication in . . . a public forum in connection with an issue of public interest." N.Y. Civ. Rights Law § 76-a(1)(a)(1). This conclusion best comports with "the expansive interpretation of this standard" employed by New York courts, *Aristocrat Plastic Surgery*, 206 A.D.3d at 30, as well as the state legislature's express intent to "broadly widen[] the ambit of the law," Assembly Mem. in Support, Bill Jacket, L. 2020, ch. 250 at 6. Because we find that the instant action "involv[es] public petition and participation," the higher standard of fault prescribed by New York's anti-SLAPP statute must apply. N.Y. Civ. Rights Law § 76-a(2). We discuss that higher standard as it relates to this appeal below.

### 2. Newsweek's Actual Malice

Under New York's anti-SLAPP statute, The Satanic Temple must prove that Newsweek acted "with knowledge of [the statement's] falsity or with reckless disregard of whether it was false." *Id.* In

19

defamation claims that implicate the First Amendment, this fault standard is known as "actual malice." *New York Times*, 376 U.S. at 280. Though New York's anti-SLAPP statute is clearly a *statutory* speech protection, we think that the state legislature intended the statute's standard of fault to mirror the constitutional "actual malice" standard, such that we may draw from cases applying both the statutory and the constitutional standards. Three observations support that conclusion. First, the fault standard in New York's anti-SLAPP statute imports nearly word-for-word the constitutional actual malice standard as articulated by the Supreme Court in *New York Times v. Sullivan*. *Compare* N.Y. Civ. Rights Law § 76-a(2) (standard is whether the statement "was made with knowledge of its falsity or with reckless disregard of whether it was false") *with New York Times*, 376 U.S. at 280 (actual malice requires making a statement "with knowledge that it was false or with reckless disregard of whether it was false"). Second, when it enacted the statute in 1992, the New York state legislature expressly stated that it was imposing an "actual malice" standard of fault. *See* Assembly Mem. in Support, Bill Jacket, L. 1992, ch. 767 at 9. Third, New York courts applying the anti-SLAPP statute freely borrow from cases applying the constitutional "actual malice" standard when determining whether the plaintiff has met the statute's fault standard. *See, e.g., Carey v. Carey*, 220 A.D.3d 477, 479 (1st Dep't 2023). Therefore, we too rely on cases applying both the statutory and constitutional fault standards in order to determine whether The Satanic Temple established a triable issue of fact as to Newsweek's actual malice.

To show actual malice, The Satanic Temple must demonstrate "that the author in fact entertained serious doubts as to the truth of his

publication or acted with a high degree of awareness of probable falsity" prior to publication. *Kipper v. NYP Holdings Co.*, 12 N.Y.3d 348, 354 (2009) (cleaned up). The Satanic Temple claims that it established a triable issue of fact as to Newsweek's "serious doubts" about the cover-up quote's truth, *id.*, and offers several arguments as support: (1) Newsweek's failure to follow its own editorial standards, (2) Duin and Cooper's bias against the organization, (3) Newsweek's use of a hostile and pseudonymous source, and (4) Newsweek's shortcomings in its fact-checking. Even construing the record in the light most favorable to The Satanic Temple, actual malice is a "decidedly high standard of culpability," and we conclude that none of the above, taken alone or in combination, is enough to raise a triable issue of fact as to Newsweek's actual malice. *Id.* at 355.

First, assuming *arguendo* that Newsweek violated its own editorial guidelines by, for example, failing to be "specific and complete" when writing about criminal allegations, that failure does not constitute actual malice. App'x at 553. Even "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" cannot alone establish actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989) (quotation marks omitted); *see also Swiezy v. Investigative Post, Inc.*, 228 A.D.3d 1266, 1270 (4th Dep't 2024) ("[W]hether [the reporter] complied with journalistic standards is of little evidentiary value" in an actual malice dispute). The Satanic Temple contends that, even if compliance with industry-wide journalistic standards is not enough to establish actual malice, compliance with one's *own* standards is more probative of a

21

news outlet's reckless disregard for the truth. We disagree. Whether the newsgathering standards were industry-wide norms or Newsweek's own, The Satanic Temple's argument sounds in negligence, and "proof of mere negligence does not suffice to establish actual malice." *Kipper*, 12 N.Y.3d at 355 (quotation marks omitted).

Likewise, Cooper and Duin's alleged bias against The Satanic Temple—again, assuming *arguendo* that they possessed such a bias—is not enough to establish that Newsweek acted with actual malice as to the cover-up quote. "Actual malice" as a standard of fault "should not be confused with . . . a motive arising from spite or ill will." *Id.* at 354 n.4 (quotation marks omitted). Therefore, the standard "is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks*, 491 U.S. at 666. While we have said that "[e]vidence of ill will *combined with* other circumstantial evidence indicating that the defendant acted with reckless disregard of the truth" may support a finding of actual malice, "[s]tanding alone, . . . evidence of ill will is not sufficient." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) (emphasis added). For example, in *Celle*, we found that the defendant acted with actual malice because his own testimony strongly suggested that he doubted the truth of his statement prior to publication; his long history of "personal animosity" toward the plaintiff merely underscored his knowledge of falsity. *Id*. at 186–87. Here, even if Duin and Cooper were biased against the Temple (and that much is unclear), there is no evidence tending to show their "subjective awareness of [the statement's] . . . probable falsity," as there was in *Celle*. *Id.* at 182. Standing alone, Duin and Cooper's alleged bias is insufficient.

Third, Newsweek's reliance on Strange as a source does not support a finding of actual malice. A journalist's use of an anonymous—or, in this case, pseudonymous—source does not establish actual malice unless the story is, for example, "based *wholly* on an unverified anonymous" report from that source, or where "there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (emphasis added). Here, Strange's report of "accounts of sexual abuse being covered up in ways that were more than anecdotal" was corroborated by multiple other sources, such that Duin had no "obvious reason[]" to doubt him or the statement's veracity. *Id.* The Satanic Temple further argues that Newsweek demonstrated a reckless disregard for the truth by relying on a "hostile" source in Strange, who left the organization due to disagreements with its direction. Appellant's Br. 66. But we rejected a similar argument in *Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001), in which the defendant reporter relied on "a former high-ranking" member of plaintiff's organization who had previously "tried to frame the [organization] . . . by staging a phony death threat." *Id.* at 175. Even in the face of that overt bias, we held that the reporter's reliance on the source could not establish actual malice sufficient to elude summary judgment in light of the reporter's "considerable corroboration" of the source's account. *Id.* Similarly, Newsweek's use of the "considerabl[y] corroborat[ed]" quote from Strange cannot support a finding of actual malice here. *Id.*

Fourth, and finally, neither Newsweek's failure to independently fact check the cover-up quote nor its failure to ask

Greaves for his response to it is sufficient to create a triable issue of fact on actual malice. It is uncontroverted that Cooper relied on Duin to fact-check her own article, and that Duin did not specifically ask Greaves about Strange's cover-up quote during their interview. Perhaps those actions were negligent, but neither demonstrates a reckless disregard for the truth of the cover-up quote. *Cf. Kipper*, 12 N.Y.3d at 355 (A newspaper's "failure to employ fact-checkers" or "attempt to verify the status of [the plaintiff's] license prior to publication" is "proof of mere negligence [that] does not suffice to establish actual malice by clear and convincing evidence." (cleaned up)). A news outlet's insufficient investigation alone is not enough to demonstrate actual malice; we have said that "a publisher who does not already have obvious reasons to doubt the accuracy of a story is not required to initiate an investigation that might plant such doubt." *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 124 (2d Cir. 2013) (cleaned up). The Satanic Temple points to no such "obvious reasons" that ought to have prompted Newsweek to investigate further. *Id.*

In sum, it may well be the case that Newsweek was unaware whether Strange's cover-up quote was indeed true prior to publication. But "there is a critical difference between not knowing whether something is true and being highly aware that it is probably false," and "[o]nly the latter establishes reckless disregard in a defamation action." *Liberman v. Gelstein*, 80 N.Y.2d 429, 438 (1992). Nothing on this record supports an inference that Newsweek was highly aware that the cover-up quote was false—if indeed it was—before hitting publish.

We therefore agree with the district court: No reasonable jury could find that Newsweek either knew or entertained serious doubts

24

that the cover-up quote was false prior to publication.

## CONCLUSION

When speech occurs in "a public forum in connection with an issue of public interest," New York law affords defamation defendants greater protection than constitutionally required. N.Y. Civ. Rights Law § 76-a(1)(a)(1). The district court recognized and applied that higher fault standard to this dispute. Because we agree that The Satanic Temple's claim falls within New York's anti-SLAPP statute and that the Temple failed to establish a triable issue of fact as to actual malice, the district court's March 27, 2025 judgment is **AFFIRMED** in full.